THE STATE OF KANSAS v. MARGARET J. PALMER.

1. FALSE PRETENSES—*Information*—*Pleading.* Good pleading requires that an information charging the crime of obtaining money or other property by means of false pretenses should directly and positively negative each distinct material representation alleged to have been made.

2. ———*Evidence.* To convict one charged with having obtained money or other property by means of false pretenses, the proof must show that the party complaining was actually defrauded.

3. COMPLAINANT, *Not Defrauded.* The testimony in this case examined, and *held,* that it does not show that complainant was defrauded.

*Appeal from Shawnee District Court.*

PROSECUTION for obtaining money under false pretenses. Verdict of guilty, and judgment thereon, January 27, 1892. Defendant, *Margaret J. Palmer,* appeals. The opinion states the facts.

*E. E. Chesney, J. T. Ward;* and *G. W. Carey,* for appellant:

There is absolutely no proof that the complaining witness, McClelland, was defrauded or harmed, but there is proof that he has not been harmed, not defrauded. This case comes precisely within the reason of the rule in *The State v. Clark,* 46 Kas. 65; *The State v. Matthews,* 44 id. 596. See, also, *The People v. Wakeley,* 62 Mich. 297.

The state does not even allege that said $700 note and said $1,500 note are in any way bad; nor does it attempt to prove that these two notes are other than perfectly good. The law presumes good faith and fair dealing and honesty. The law never presumes fraud. The law presumes innocence and never guilt, never crime; and in presuming innocence, it presumes everything necessary to constitute that innocence in in any particular cause. 3 Greenl. Ev. 29, 30; *Horne v. The State,* 1 Kas. 42; *Long v. West,* 31 id. 298; Lawson, Presump. Ev. 433, *et seq.*

See, also, Phil. Ev., notes, p. 298; Cro. Car. 550; *Benson*

*v. Bolles,* 8 Wend. 175; *Cussock v. White,* 1 Rep. Const. Ct. 282; *Sutphen v. Cushman,* 35 Ill. 198; *Eversdon v. Mahew,* 21 Pac. Rep. (Cal.) 43; *Marksbury v. Taylor,* 10 Bush, 519; Kerr, Fraud, 382; Lawson, Presump. Ev. 17.

"Insolvency is never presumed. An ability to pay all engagements is presumed in favor of every man." *Walrod v. Ball,* 9 Barb. 271. See, also, 7 Am. & Eng. Encyc. of Law, p. 780; *Babcock v. People,* 15 Hun, 347; 1 Wharton, Crim. Law (6th ed.), § 707; *Henderson v. The State,* 14 Tex. 503; *Commonwealth v. McKie,* 1 Gray, 61; *Lewis v. Headly,* 36 Ill. 434.

The information was not quashed on motion, though it was essentially defective. It did not specifically and distinctly negative the alleged representations. See *The State v. Lewis,* 26 Kas. 130, 131; 7 Am. & Eng. Encyc. of Law, p. 773; *Keller v. The State,* 51 Ind. 111; *The State v. Webb,* 26 Iowa, 262; *The State v. De Lay,* 5 S.W. Rep. (Mo.) 607, 608, 609; *The State v. Bradley,* 68 Mo. 140; *The State v. Pickett,* 78 N. C. 458; *Amos v. The State,* 10 Humph. 117; *Tyler v. The State,* 2 id. 37; *The State v. Metsch,* 37 Kas. 225, 226; *The State v. Peacock,* 31 Mo. 416; 3 Chitty, Cr. L. 762, 999; *Rex v. Parrott,* 2 M. & S. 385–392; Archbold, Cr. Pl. & Ev., Pomeroy's Notes (8th ed.), p. 1733; 2 Bish. Cr. Proc., §§ 922, 923; Whar. Cr. L., § 2259; *The State v. Mumford,* 1 Dev. 519, 522; *Gibson v. The State,* 44 Ala. 23; *United States v. Cruikshank,* 2 Otto, 542; *Gas Co. v. San Francisco,* 9 Cal. 474; *Gabrielsky v. The State,* 13 Tex. App. 439; *Donahue v. The State,* 14 id. 642; *Turner v. The State,* 18 S. W. Rep. (Tex.) 792; *Burns v. The People,* 59 Barb. 544.

*John N. Ives,* attorney general, and *R. B. Welch,* county attorney, for The State:

Was McClelland defrauded? The jury believed and found that he was defrauded. Evidence was introduced which would convince any man that the note was worthless, and that it would be silly to attempt to collect it. It is true the state did not produce the alleged signers of this note, for the reason (if they

existed at all) they were beyond the jurisdiction of this court. The state could not even hear from them.   Nor is it required that the false pretenses be the "paramount cause of obtaining the property."   "It is sufficient if they are a part of the moving cause, and without them the prosecutor would not have parted with the property." *In re Snyder*, 17 Kas. 555.

On behalf of the appellant, it is contended that the information did not distinctly and specifically negative the alleged false pretenses.   The information, after setting forth the representations of Miss Palmer, says:

"[When] whereas, in truth and in fact, each and all of the said representations were false and fraudulent, and the said Margaret J. Palmer knew them to be false and fraudulent at the time she so made them to said Francis L. McClelland. And the said Margaret J. Palmer did then and there unlawfully, designedly, willfully, feloniously, and with the intent to cheat and defraud said Francis L. McClelland, make said false and fraudulent representations, and thereby and by reason thereof obtained," etc.

We think this an exact compliance with §§ 103 and 104 of the criminal code.   Surely the defendant is informed of the exact nature of the charge against her.   There is no trouble here in determining the exact crime and person charged. Crim. Code, § 110.

Opinion by STRANG, C.: This is an appeal from a conviction in Shawnee county, on an information charging the defendant with having obtained money under false pretenses. The information alleges that the defendant, on the 28th day of August, 1891, obtained from Francis L. McClelland, at Topeka, Kas., the sum of $200, by falsely, unlawfully, designedly and feloniously representing to said Francis L. McClelland:

"1. That she was then and there the owner of a certain promissory note, bearing date November 13, 1890, due in one year after date, payable to the order of M. J. Palmer, for the sum of $3,000, at 6 per cent. interest from date; and that the same was duly signed by Jacob S. Fege, Moses Gincrich, and

Joseph Palmer, and that said note was genuine and worth its full face value.

"2. That she, the said Margaret J. Palmer, was then engaged in the business of selling silkworm eggs, and was doing a large and extensive business, amounting to thousands of dollars; that she procured her silkworm eggs from Professor Gore, at Portland, in the state of Maine, and that she had recently sent to said Professor Gore, through the Wells-Fargo Express Company, at its office in Wichita, Kas., large sums of money in payment for said silkworm eggs, and that she had recently sent to Professor Gore, at Portland, Me., the money theretofore advanced by said Francis L. McClelland through said office for silkworm eggs.

"3. That she was then receiving, from time to time, large and extensive orders for silkworm eggs, amounting to thousands of dollars, and that there had been sent to Wichita, Kas., through the Wells-Fargo Express Company, at their office at said city, to her address, a large package of silkworm eggs; that said eggs were then needed to fill orders already in, and that to lift said eggs from the said express company's office would require a large sum of money; that she had arranged with Senator O. H. Bentley, of Wichita, to send said money and said charges for said silkworm eggs to Professor Gore, of Portland, Me., and that said money was actually needed for said purpose; that, by the sending of said money, silkworm eggs to the value of many thousands of dollars would be obtained by said Margaret J. Palmer to fill large orders already received by her, and that said package of silkworm eggs had been sent back to Professor Gore, or were about to be sent back, if said charges were not paid, and that she had received all the money necessary to pay the charges for said silkworm eggs, except $200, which she wished said Francis L. McClelland to raise; that the said Francis L. McClelland, believing and relying upon said representations so as aforesaid made to him by said Margaret J. Palmer, delivered to said Margaret J. Palmer, for her use and benefit, and the said Margaret J. Palmer obtained from said Francis L. McClelland, the sum of $200, lawful money of the United States, the personal property of the said Francis L. McClelland, of the value of $200; a more particular description of which said money and personal property is unknown, and cannot be given; [when] whereas, in truth and in fact, each and all of said representations were false and fraudulent, and the

21—50 KAS.

said Margaret J. Palmer knew them to be false and fraudu-
lent at the time she so made them to said Francis L. Mc-
Clelland. And the said Margaret J. Palmer did then and
there unlawfully, designedly, willfully, feloniously, and with
intent to cheat and defraud said Francis L. McClelland, make
said false and fraudulent representations, and thereby and by
reason thereof obtained said sum of $200 from said Francis
L. McClelland, contrary to the form of the statute in such
cases made and provided, and against the peace and dignity
of the state of Kansas."

The information in this case was challenged by motion to
quash, which motion was overruled. It is a very serious
question whether the court did not err in overruling such
motion.

There are a large number of allegations in the information
which are negatived, in a general and somewhat indefinite
manner, but the principal one relied on in the trial of the
case is the allegation in relation to the $3,000 note. In fact,
on the trial the conviction was sought, and evidently had, on
the ground that the defendant had obtained the $200 from
McClelland by making to him the alleged representations re-
garding the $3,000 note, and delivering the same to him as
security in part for whatever money he put into the business
that she represented herself engaged in, the purchasing and
selling of silkworm eggs for a profit. But the information
does not allege the delivering of the note to McClelland at
all, and does not in any direct and specific way allege that she
was not the owner of said note, or that it was not worth its
face value. The alleged representations in the information
are divided into three distinct classes, and each class contains
numerous separate representations, and each of these classes
of representations, including all the representations of each
class, is negatived with a single general allegation of falsity.
We do not think this is good pleading, but, as this case is to
be reversed on another ground, we will only say in this con-
nection, that in criminal cases the charges should be direct and
certain; and in this class of cases good pleading requires that

each distinct and material allegation should be directly and specifically negatived.

Counsel for appellant claim that there is no proof in the record that McClelland was defrauded. A careful examination of the record satisfies us that this contention is well founded. McClelland claims that he was the agent of the defendant for the entire period of time during which he let her have any money; and that the arrangement between them was, that he let her have certain sums of money to put into her business, buying and selling silkworm eggs, which he was to receive back out of the first sales, with a share of the profits; and that in the meantime he was to be secured for the money he put in with certain notes, which he was to hold as collateral security for all money he let her have. In all his testimony, McClelland insisted that he would not have let the defendant have the money without the notes as security. He let her have, in all, less than $1,300 that he did not get back; and the undisputed evidence shows that he received from her, as security, a note for $700, one for $1,500, and one for $3,000. There is some evidence to show that the $3,000 note is worthless. But there is no certain or conclusive evidence of that fact. There was never any attempt on the part of McClelland, or anyone for him, to collect said note. It was never sent to the home of the makers for collection. No one of the makers was ever asked to pay it. There is no evidence that the note was not made by the parties whose names were signed thereto, nor that they were not fully able to pay it. It is true it was shown, by evidence of doubtful competency, that there was no First National Bank at Chambersburg, Pa.; and that a dispatch, purporting to come from Chambersburg, signed "First National Bank," saying, in substance, that the note was good, was manufactured here by the defendant, with the aid of an honest but incompetent operator of the Western Union Telegraph Company; and yet, in spite of these things, the note might be genuine and collectible. But suppose this note was worthless: What is there in the record to show that the other two notes

were not worth their face value? We discover nothing. McClelland was in possession of both of these notes when he let the defendant have the last $200, August 28, 1891, and, so far as the record shows, has them still. These two notes amount to $2,200, without any interest thereon. The only reference to either of these two notes, except as to the fact that he received them as security, is in one of McClelland's letters to the defendant, in which he called her attention to the fact that the $1,500 note was due, and that to keep it good she ought to have some of the principal or the interest paid — an indication at that time that he thought the note was good. The record shows no attempt to collect either of these notes, and no complaint that they were not collectible. If these two notes are good and collectible, McClelland has at least $2,200 in security for less than $1,300 that he let the defendant have and did not get back. With such a state of things, we do not see how he was defrauded. It may be said that he would not have let the defendant have the $200 August 28, 1891, without the $3,000 note as additional security. That may be true; but if true, and if the $3,000 note is worthless, yet if the collateral already in his possession was sufficient to save him from loss on the $200, he was not defrauded; and if not defrauded, the defendant could not be guilty of a crime in connection therewith. The mere obtaining of money under false pretenses does not alone constitute a crime. The money must be obtained to the injury of some one. Though money is obtained by misrepresentation, if no injury follows, no crime is accomplished. In this case, the defendant was undoubtedly guilty of many flagrant misrepresentations and other dishonest acts; but if all such representations and dishonorable acts did not actually result in injury to McClelland, she cannot be convicted in this state simply because upon the face of things she is bad. A person must be charged with and convicted of some specific offense, if convicted at all. It will not do to convict on general principles, because the evidence shows the defendant devoid of common honesty. Many of the statements made

by the defendant to McClelland concerning her business are so ludicrously extravagant that they of themselves should have warned him of the character of the person he was dealing with.

We think the record wholly fails to show that McClelland was defrauded out of anything by the defendant; and that it does not satisfactorily show that even the $3,000 note was not genuine and collectible. It is therefore recommended that the judgment of the trial court be reversed, and the case remanded for further proceedings in that court.

By the Court: It is so ordered.

All the Justices concurring.