### McGee *v.* The State.

*Atkinson, J.*—1. Where a debtor executed to two creditors separate mortgages to secure debts due to them respectively, and it appears that, in procuring the credit to secure which the last mortgage was executed, he represented to the mortgagee that the property mortgaged was unincumbered, such misrepresentation cannot be made the basis of a prosecution for cheating and swindling under section 4587 of the code, unless it be shown that, in consequence thereof, the second mortgagee has been in fact defrauded, and that in extending the credit upon the faith of such misrepresentation, he has sustained a loss.

2. In such a case, the burden is upon the State, not only to establish the misrepresentation made and credit given, but likewise a loss; and where the evidence shows that the mortgaged property has neither been sold, nor appropriated to the extinguishment of the senior mortgage, there is no such evidence of a loss by the junior mortgagee as will sustain a conviction of the debtor; especially is this true, where the evidence shows that the mortgaged property exceeds in value the aggregate indebtedness represented in both the mortgages, and it does not

appear that the senior mortgage is being either claimed against the mortgagor, or enforced against the mortgaged property.

July 8, 1895.   By two Justices.          *Judgment reversed.*

Accusation of cheating and swindling.   Before Judge. Williamson.   City court of Monroe county.   May term, 1895.

The accusation charged, that on February 13, 1895, in. Monroe county, McGee unlawfully and falsely represented. to R. B. Stephens, of the firm of Stephens & Ensign, that. at the time he executed and delivered a mortgage to that. firm, on a red cow three years old, a bay mare pony eight. years old, and a white painted buggy, there were no other liens upon said property, when he knew there were other liens upon it, and by said false representations obtained a. credit of said firm, and thereby defrauded said firm of rent. on Frank Smith amounting to $17.17.   Indictment and trial by jury were waived.   The judge found defendant. guilty, and he excepted on the grounds that this judgment was contrary to law and evidence, etc.

Stephens swore: He received from defendant a mortgage for $22.70, on the property described in the accusation. (The mortgage, dated February 13, and recorded February 16, 1895, states that the property is unincumbered, and not subject to homestead and trust funds.)   Defendant. stated expressly that the property was unincumbered, and. upon the faith of this representation Stephens, for the firm of Stephens & Ensign of which he is a member, cancelled the debt against one Smith, defendant's brother-in-law, for rent, who was at that time proceeding against the property of defendant by attachment, and at the time of the execu- tion of the mortgage had the same under levy. · Stephens & Ensign have not been paid the amount of the mortgage, but it has been foreclosed and the property mentioned therein is now in the hands of the officer under foreclosure; it has not been sold but is to be sold.   Witness has gone to considerable expense in finding defendant and the prop-

erty. He has foreclosed the mortgage and furnished a horse to the levying officer. He has spent about $11 in getting defendant and finding the property. Up to the present time he has paid out nothing in such pursuit. The property mortgaged, if sold, might pay his mortgage, but would not pay off it and the Ashworth mortgage; this is his opinion, he has no personal knowledge of the value of the property. Ashworth testified: Defendant executed him a mortgage note for $19.45, dated and recorded January 31, 1895, covering one Brewster spring buggy gear, body black; also, one red cow three years old named Dolly; also, one black mare pony about ten years old. Since his arrest defendant told witness that he had disposed of the property named in this mortgage, and that the reason he did so was because the mortgages given both parties were due on October 1, 1895 (the mortgage note to Stephens & Ensign appears to have been due one day after date, and that to Ashworth on October 1, 1895), and that he expected to pay them off before that time; that the value of the horse mortgaged was from $15 to $20, and that of the buggy $19.45 at the time he sold it in January. Henry Tison testified, that he bought a black horse from defendant in Monroe county, and paid $7 for it. John Abernatha testified, that he bought a black bodied buggy with running gear painted white, for which he gave a silver watch; that buggy was worth $12 to $15; that the horse sold Tison was more black than dark bay; that he did not think defendant had any other horse and buggy, never saw him with any other, and lived not far from him; and that the trade was made in Monroe county. R. S. Britt testified, that the cow was worth $12 or $15; that he would not have the horse, but did not know what it was worth; that he had not seen defendant with any other horse or cow since January, 1895; that he had seen the buggy named in the Stephens mortgage, that it was white running gear with black body; and that he did not know how many

horses defendant had; lived close to him, and never saw any other than this one on his place. J. W. Jackson testified, that he bought a red cow from defendant, which filled the description in the mortgage, and its value was $10. Lewis Carson testified that he had bought a black horse from Tison in Monroe county, for which he paid about $3.

*Persons & Persons,* for plaintiff in error.
*O. H. B. Bloodworth, solicitor-general,* contra.