The STATE of Utah, Plaintiff and Respondent,

v.

Kenneth M. FORSHEE, Jr., Defendant and Appellant.

No. 15566.

Supreme Court of Utah.

Dec. 1, 1978.

4. U.C.A., 1953, 75–8–101(2)(b), as amended.

5. U.C.A., 1953, 59–12–31, supra.

6. U.C.A., 1953, 75–3–916(2), supra, as amended.

D. Kendall Perkins, Salt Lake City, for defendant and appellant.

Robert B. Hansen, Atty. Gen., Earl F. Dorius, Asst. Atty. Gen., R. Paul VanDam, County Atty., Gregory L. Bown, Deputy County Atty., Salt Lake City, for plaintiff and respondent.

WILKINS, Justice:

Defendant, a used car dealer, was tried and convicted of theft by deception, a second degree felony, in violation of Section 76–6–405, Utah Code Ann., 1953, as amended, after selling a used car on which the odometer had been turned back from 73,000 miles to 33,000 miles. Defendant was tried before a Judge of the District Court of Salt Lake County, the defendant having waived the jury. Defendant appeals from the judgment entered. All statutory references are to Utah Code Annotated, 1953, as amended.

At trial, the victims, Mr. and Mrs. Smith, each testified that during the negotiations for the sale of the car, defendant had told them on three occasions that the 33,000 miles shown on the odometer was the correct mileage, that the previous owner, a young girl, had had the car repainted, and that defendant had assured them that no dealers turn odometers back in this present age because of the risks of high fines and possible loss of their licenses.

Four months after they purchased the car, the Smiths discovered a half-painted sticker on the inside of the car's door which revealed that the car had last been serviced at 73,000 miles. Photographs of the sticker and the current reading on the odometer were then taken, under the direction of the Motor Vehicles Department of the State of Utah, and later were entered into evidence in this case.

The Smiths further testified that after they had talked with the Motor Vehicles Department, defendant called, and asked them to come to his office, which they did. He said "you have got me cold" and offered to overhaul the car's engine if they would falsify an odometer affidavit so that the State would "get off" defendant's back.

Other evidence showed that the defendant had acquired the vehicle at the Salt Lake City Auction for $1,850, and at that time the odometer reading was over 73,000 miles. Defendant testified that although he was a part owner of Love's Motors, he was merely a salesman in this transaction, and had no idea that the odometer had been turned back. Defendant denied that he had any conversation concerning the mileage with Mr. and Mrs. Smith.

Defendant argues (1) that the act of turning the odometer back on a used automobile is specifically made a misdemeanor under the provisions of Sec. 41–6–177 et seq., and that he should have been tried under those provisions rather than the theft provisions; (2) that the theft by deception provisions are vague and ambiguous and therefore unconstitutional; (3) that the prosecution failed to prove an essential element of the offense, to wit, that the victim was deprived of any property; and finally, (4) that the State failed to prove that any property of which the victim was deprived had a value in excess of $1,000.

■ Defendant's first and second points are without merit. He appears to argue that though he knew that turning the odometer back was a crime, he had counted on the fact that such a crime was only a misdemeanor, and it was therefore unconstitutional to try him for a felony. From that position, he reasons that the theft statutes are vague and ambiguous. Section 76–6–405 is not unconstitutionally vague or ambiguous, and Section 41–6–177 applies only to the turning back of the odometer, and not to the use of such fraudulent action to obtain property. The question is, properly, whether the State has proved each and every element of the crime for which defendant was charged, namely, theft by deception. Section 76–6–405 provides:

(1) A person commits theft if he obtains or exercises control over property of another by deception and with a purpose to deprive him thereof.

(2) Theft by deception does not occur, however, when there is only falsity as to matters having no pecuniary significance, . . .

This is a first review of this section since its adoption by the Legislature in 1973. Definitions of the terms used are found in Sec. 76–6–401:

(1) "Property" means anything of value, . . .

(2) "Obtain" means, in relation to property, to bring about a transfer of possession . . .

(3) "Purpose to deprive" means to have the conscious object:

(a) To withhold property permanently . . .

(5) "Deception" occurs when a person intentionally:

(a) Creates or confirms by words or conduct an impression of law or fact that the actor does not believe to be true and that is likely to affect the judgment of another in the transaction . . .

■ Credible evidence adduced at the trial established the deception; that is that defendant told the victims that the 33,000 miles shown on the odometer was the correct mileage knowing that it was not. Other evidence showed that the mileage on the odometer of a used car is a factor which is likely to affect the judgment of the buyer, and has pecuniary significance. Mr. Smith also testified that he would not have purchased the car had he known the true mileage.

It is therefore clear that the State proved each and every essential element of the offense. Defendant brought about the transfer of the Smith's money to himself by means of a deception with the conscious objective of withholding the money permanently.

The significant question is whether defendant deprived the victims of property having a value of over $1,000.

Defendant argues that the Smiths received a quid pro quo and that the fair market value of the vehicle should be deducted from the money received by defendant in determining the degree of the crime. The only evidence of the value of the car at the time of the sale was defendant's own testimony that in November of 1976, a 1973 Monte Carlo was selling at retail for $3,100 and at wholesale for $2,900. There was no testimony of the value of a car of this age and style which had been driven for over 73,000 miles.

■ The value of the property determines the degree of the offense and must be proved by the State.[1] But the degree of the crime must be measured by the value of the property obtained by the defendant as a result of the deception, rather than the value of any property received by the victim.[2]

■ In *People v. Ross,* 25 Cal.App.3d 190, 100 Cal.Rptr. 703 (1972), the Court considered the question here presented and held that the defendant could not offset the value of the automobile used to accomplish the fraud against the amount obtained from the victims to reduce the crime to petty theft. The Court there reasoned that subsequent restoration, restitution or repayment is not a defense to this crime and neither is the fact that the victim received some value for his money, for the victim is defrauded if he did not receive what he bargained for, in the full amount extracted by the defendant.

In the instant case, the victims were deprived of $2,800 (though as noted they received some value therefor) which amount is well above the statutory amount establishing a second degree felony, under Section 76–6–412, and the judgment of the District Court is affirmed.

ELLETT, C. J., and CROCKETT, MAUGHAN and HALL, JJ., concur.

---

1. Section 76–6–412. See also *State v. Seymour,* 49 Utah 285, 163 P. 789 (1917); *State v. Parker,* 104 Utah 23, 137 P.2d 626 (1943).

2. See, for example, the case of *State v. Seymour, supra,* note 1. There, the defendant was tried under the former statute of obtaining property by false pretenses for selling stock of a certain corporation, having misrepresented that the company was supported and endorsed by high church officials in whom the victim had great confidence. In that case, defendant argued that the information under which he was charged was insufficient in that it neither alleged the value of the stock nor alleged that the stock was not worth what the complaining witness had paid for it. This Court held that the information was not insufficient on that ground, but ordered a new trial because the information did not allege the value of the $250 promissory note given by the victim to the defendant in payment of the stock.