626 P.2d 1292

**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**Linda MARTINEZ, Defendant-Appellant.**

No. 3630.

Court of Appeals of New Mexico.

Aug. 21, 1979.

Sutin, J., filed a dissenting opinion.

Jeff Bingaman, Atty. Gen., Charlotte Hetherington Roosen, Janice M. Ahern, Asst. Attys. Gen., Santa Fe, for plaintiff-appellee.

Joseph A. Sommer, Sommer, Lawler & Scheuer, P. A., Santa Fe, for defendant-appellant.

OPINION

LOPEZ, Judge.

Four of the five counts of the indictment charge fraud over $2,500 in violation of § 30–16–6, N.M.S.A. 1978. The remaining count charges conspiracy to defraud contrary to § 30–28–2, N.M.S.A. 1978. Defendant received a directed verdict as to the conspiracy charge and one of the fraud charges. After deliberation, the jury found defendant guilty of two of the remaining fraud counts (counts I and IV). The trial court set aside the guilty verdict on count I based upon the statute of limitations. This action was reversed by this Court in *State v. Martinez*, 92 N.M. 291, 587 P.2d 438 (Ct. App.), *cert. quashed*, 92 N.M. 260, 586 P.2d 1089 (1978). We affirm defendant's convictions and remand for sentencing as to count I.

*Facts*

In April 1974, W. R. Smartt and Sue M. Smartt listed for sale approximately 120 acres of property located south of Vallecitos, New Mexico, with defendant, a salesperson associated with G. H. Denton, a broker. When the Smartts listed the property, they assumed that its western boundary was the Vallecitos River. Through the efforts of defendant, the property was sold in June of 1974 to Mack and Ann Thomas. Defendant represented to Mr. Thomas that the western boundary of the property was in the center of the Vallecitos River. The location of this boundary was integral to the Thomases' decision to purchase the property. A real estate contract was executed between the Smartts and Thomases. However, this contract was subsequently rescinded by the Thomases when it was discovered that the property bordering the river was not owned by the Smartts. Defendant knew that the contract was rescinded because of the absence of a riverfront boundary. During the summer of 1974, defendant contacted Albert Martinez who, according to a 1971 survey, is the owner of 4.5 acres of the riverfront property and requested that he give her a deed to this land. Martinez refused this request. Subsequently, Martinez met with Denton at the latter's office; during this meeting, at which defendant was present, Denton requested that Martinez relinquish the deed to this land. Martinez refused to do so. The remaining portion of the purported western boundary of the Smartts' property is owned by the Carson National Forest.

On August 1, 1974, the property previously sold to the Thomases was purchased by a partnership consisting of defendant, Denton and James A. Scarborough. Although the original purchase price to the Thomases was $110,000, the sales price to the partnership was reduced by $5,000 because of the lack of a riverfront boundary. The Smartts gave the partnership a quitclaim deed to Martinez' 4.5 acres. After the partnership purchased the property, four separate parcels of property were sold to individual purchasers. These purchasers are named in counts I through IV of the indictment. Count I concerns the sale to Barbara Francis and Jay Davis; count IV involves the sale to John and Katherine Crosby. Defendant represented to all four sets of purchasers that a common area would be included in the sale of the separate parcels. Of this common area, each buyer was to share jointly in an undivided and unspecified interest. The area was to be comprised of the property adjacent to and directly east of the Vallecitos River and was to

extend north into a canyon. The western boundary of the area was to be the center of the Vallecitos River.

Defendant raises seven points for reversal: (1) there was insufficient evidence to establish that defendant had no title or interest in the property known as the common area; (2) there was insufficient proof to establish that the representations of defendant were materially false; (3) there was insufficient evidence to establish that defendant intended to make the false statements; (4) the trial court erred in not granting defendant's motion for judgment of acquittal, n. o. v., as to count IV; (5) the court erred in denying defendant's motion for a new trial; (6) there was insufficient evidence to establish that defendant obtained money over $2,500 from the buyers; and (7) the court erred in admitting testimony concerning the reduction of the purchase price paid by the Crosbys. Our discussion is divided into three sections: (1) issues answered summarily; (2) sufficiency of the evidence to establish fraud over $2,500; and (3) admission of testimony relating to the reduction of the purchase price.

*(1) Issues Answered Summarily*

(A) Title or Interest in the Common Area

 Defendant argues that the State failed to prove her lack of title or interest in the property known as the common area. We conclude that this argument is without merit. In arriving at this conclusion, we are guided by the principle that as an appellate court we are "required to view the evidence as a whole in the light most favorable to the State, resolving conflicts and indulging all permissible inferences in favor of the verdict." *State v. Hartley*, 90 N.M. 488, 490, 565 P.2d 658, 660 (1977); *accord, State v. Thoreen*, 91 N.M. 624, 578 P.2d 325 (Ct.App.), *cert. denied*, 91 N.M. 610, 577 P.2d 1256 (1978). The record reveals that the property owned by the Smartts was originally purchased from Alfonso Chacon. Jim Rubin, the attorney who represented the Smartts in the sale of the property to the Thomases, testified that the quitclaim deed executed by the Smartts to the partnership for the 4.5 acres was not in Chacon's or Smartts' chain of title. In addition, the 1971 survey clearly shows that the western boundary of the Smartts' property was not the Vallecitos River. Furthermore, the attempt of defendant to obtain a deed from Martinez supports the permissible inference that she did not own the property and knew she did not. Finally, the record establishes that the canyon area immediately north of the Martinez property is owned by the Carson National Forest. Accordingly, under these facts, we hold that there was sufficient evidence to establish that defendant had no title or interest in the common area. In arriving at this holding, we note that defendant apparently relies upon a claim of adverse possession to support her contention that the partnership received good possessory title through the quitclaim deed transferred to it by the Smartts. The record discloses that Albert Martinez paid the taxes on the riverfront property which is the subject of this deed. Therefore, we rule that this reliance is misplaced. *See* § 37–1–22, N.M.S.A. 1978.

(B) Defendant's Representations

Defendant contends that the State failed to prove the false nature of those representations made by her to the Crosbys concerning title to the common area. In so contending, defendant relies upon the possibility that ownership to the center of the Vallecitos River would be capable of fulfillment at some time subsequent to closing and the admission of conflicting surveys into evidence. We conclude that this reliance is misplaced and that, therefore, defendant's contention is without merit.

 the record indicates that defendant represented to the Crosbys that they were purchasing approximately 80 acres of land and an interest in riverfront property. It also discloses that defendant advertised

riverfront property for sale subsequent to the recission of the initial sales contract between the Smartts and the Thomases. The initial written agreement for the Crosby purchase reveals that a "common deed to river frontage & canyon area" was to be included in the sale. This agreement was signed by defendant. It may be permissibly inferred from this evidence that defendant represented that she could deliver good, present title to the riverfront property at closing. Additionally, Mrs. Crosby testified that the Crosbys would not have purchased the property if it were not for defendant's representations that the purchase included river frontage. Furthermore, defendant recognized that this frontage was an inducement to buy the property. This evidence does not support the inference that the Crosbys bought the property with the understanding that they would receive good title to the common area sometime after closing or by adverse possession. Instead the evidence supports the conclusion that the property was purchased primarily on the understanding that good, present title to the area would be transferred at closing. We have already held that defendant had no title or interest in this area. Therefore, defendant's contention that the State failed to prove the falsity of her representations because the future possibility of ownership existed is not well taken. With respect to the conflicting surveys admitted into evidence, we note that conflicts in the evidence are to be resolved by the fact finder. *State v. Bloom*, 90 N.M. 192, 561 P.2d 465 (1977); *State v. Landlee*, 85 N.M. 449, 513 P.2d 186 (Ct.App.1973). In the present case, the fact finder was the jury. It chose to find that the western boundary of the partnership's property was not the center of the Vallecitos River. On appeal, we are not permitted to substitute our judgment for that of the jury. *State v. Elam*, 86 N.M. 595, 526 P.2d 189 (Ct.App.), *cert. denied*, 86 N.M. 593, 526 P.2d 187 (1974). Based upon the foregoing, we hold that there was sufficient proof to establish that defendant's representations were materially false.

## (C) Defendant's Intent

Defendant argues that there was insufficient evidence to establish the element of intent. Intent is an essential element of fraud. *State v. Ortiz*, 90 N.M. 319, 563 P.2d 113 (Ct.App.1977). Although seldom proved by direct testimony, intent may be established by inference from the evidence and surrounding circumstances. *State v. Ortiz, supra.* We rule that the record does not support defendant's argument.

Defendant knew that the Thomases' contract was rescinded because of the absence of riverfront property. She contacted Martinez and requested a deed to this property; she was also present when Denton made a similar request. The partnership, of which defendant was a member, bought the Smartts' property at a reduced price. The reduction in price resulted from the discovery that the Smartts could not give title to the river frontage. From this evidence, it can be reasonably inferred that defendant knew that the partnership did not have any interest or title to the riverfront property. Despite this knowledge, defendant represented to the Crosbys that they were purchasing approximately 80 acres of land and an interest in riverfront property. The initial written agreement for this purchase, which defendant signed, discloses that a "common deed to river frontage & canyon area" was to be included in the sale. In order to purchase the acreage and riverfront property, the Crosbys paid defendant's partnership $22,500. Under these facts, it can be reasonably inferred that defendant intended to make false representations and intended to misappropriate the Crosbys' money by means of these representations. Therefore, we hold that the above inferences substantially support the requisite finding of intent. *See* § 30–16–6. In arriving at this holding, we note that the State asserts that defendant's claims of naivete, innocence and good faith were matters to be weighed by the jury in determining the credibility of her testimo-

ny. We agree. *See State v. Santillanes*, 86 N.M. 627, 526 P.2d 424 (Ct.App. 1974).

#### (D) Judgment of Acquittal, N. O. V. and New Trial

Asserting that the evidence was insufficient as a matter of law to sustain a conviction, defendant argues that the trial court erred in not granting her motion for judgment of acquittal, n. o. v., as to count IV. In making this argument, defendant necessarily claims that the verdict as to count IV is not supported by substantial evidence. We disagree.

■ Defendant was charged with violating § 30–16–6 which reads in pertinent part:

> Fraud consists of the intentional misappropriation or taking of anything of value which belongs to another by means of fraudulent conduct, practices or representations.
>
> \* \* \* \* \* \*
>
> Whoever commits fraud when the value of the thing misappropriated or taken exceeds twenty-five hundred dollars ($2,500) is guilty of a third degree felony.

We have already held that there was sufficient evidence to prove (1) defendant's lack of title, (2) the material falsity of defendant's representations and (3) the element of ·intent required of a conviction for fraud. In addition, it is undisputed that the $22,500 paid by the Crosbys belonged to them, necessarily constituted value and was taken by defendant and her partners. Under this point, defendant also claims that there was insufficient evidence to establish that she obtained money over $2,500. We answer this claim in section (2) of this opinion. Based upon this answer, the foregoing holdings and the above undisputed facts, we rule that there was substantial evidence to support a conviction based on a violation of § 30–16–6. Accordingly, we hold that, since the jury could find beyond a reasonable doubt that defendant committed criminal

fraud, the trial court did not err in denying defendant's motion for judgment of acquittal, n. o. v., with respect to count IV.

■ Defendant also claims that the court erred in not granting her motion for a new trial. Defendant bases this claim on the assertions that the verdict was contrary to the weight of the evidence and the result of passion and prejudice. On appeal, we do not consider the weight of the evidence. The weight of the evidence and the credibility of witnesses are for the jury to determine. Our concern, as a reviewing court, is whether there is substantial evidence to support the verdict. *State v. Santillanes, supra.* We have already ruled that the verdict as to count IV is so supported. We also conclude that those arguments relied upon by defendant as support for her assertion of substantive impropriety are speculative. Accordingly, we hold that the court did not abuse its discretion in denying defendant's motion for a new trial. *See generally State v. Wright*, 84 N.M. 3, 498 P.2d 695 (Ct.App.1972).

#### (2) Sufficiency of the Evidence to Establish Fraud over $2,500

■ Defendant contends that the State failed to establish that more than $2,500 was paid by the Crosbys and by Francis and Davis for the land comprising the common area and that, therefore, the evidence was insufficient as a matter of law to sustain defendant's convictions. In making this contention, defendant focuses only on the value of the land which defendant had no title or interest in, i. e., the common area. As a result, defendant concludes that the ultimate loss to the victim is determinative of the degree of crime charged rather than the amount of money fraudulently obtained. We disagree.

It is undisputed that Francis and Davis paid $20,000 in down payment for their parcel of land and that the Crosbys paid $1,000 at the signing of their initial purchase agreement and $21,500 at closing. The record further discloses that none of

these buyers would have purchased their parcels if they had known that defendant could not convey good title to the common area. It follows, therefore, that title to this area was intrinsic to these sales and was what the buyers bargained for. Under these circumstances, the fact that the buyers received good title to some of the property purchased does not result in making the value of the common area, rather than the value of the money received by defendant through her fraud, determinative of the degree of crime charged. We agree with the statements made by the court in *State v. Forshee*, 588 P.2d 181 (Utah 1978), when it was faced with a similar contention:

> The significant question is whether defendant deprived the victims of property having a value of over $1,000.

> Defendant argues that the Smiths [the victims] received a quid pro quo and that the fair market value of the vehicle should be deducted from the money received by defendant in determining the degree of the crime * * * *

> The value of the property determines the degree of the offense and must be proved by the State. *But the degree of the crime must be measured by the value of the property obtained by the defendant as a result of the deception, rather than the value of any property received by the victim.*

In *People v. Ross*, 25 Cal.App.3d 190, 100 Cal.Rptr. 703 (1972), the Court considered the question here presented and held that the defendant could not offset the value of the automobile used to accomplish the fraud against the amount obtained from the victims to reduce the crime to petty theft. The Court there reasoned that subsequent restoration, restitution or repayment is not a defense to this crime and neither is the fact that the victim received some value for his money, for *the victim is defrauded if he did not receive what he bargained for, in the full amount extracted by the defendant.* (Emphasis added.)

*Id.* at 184; *accord, People v. Hess*, 10 Cal. App.3d 1071, 90 Cal.Rptr. 268 (1970); *see also State v. Schifani*, 92 N.M. 127, 584 P.2d 174 (Ct.App.), *cert. denied*, 92 N.M. 180, 595 P.2d 324 (1978). Accordingly, because defendant and her partners received $20,000 from Francis and Davis and $22,500 from the Crosbys, we hold that there was sufficient evidence to establish fraud over $2,500.

### (3) Admission of Testimony Relating to Reduction of Purchase Price

Defendant claims that the trial court erred in admitting Mrs. Crosby's testimony concerning an agreement between the Crosbys and Denton and Scarborough to reduce the purchase price for the Crosby parcel. The reduction amounted to $6,500. Because defendant did not participate in this agreement, she objected to the admission of this testimony on the ground that the agreement was not relevant, i. e., it was not binding on her. Defendant further objected to the admission of the testimony on the ground that the agreement was a compromise and, thus, was inadmissible under N.M.R. Evid. 408, N.M.S.A. 1978. On appeal, defendant argues that the admission of the testimony was highly prejudicial error because it could lead the jury to conclude not only that the value of the common area to the Crosbys was over $2,500 but also that the area was not owned by defendant and her partners. We hold that the trial court did not err in admitting Mrs. Crosby's testimony.

Defendant's objection that the admitted testimony was not relevant is not well taken. The testimony was relevant to making the existence of fraud more or less probable. N.M.R. Evid. 401, N.M.S.A. 1978. In addition, it tended to prove that the partnership did not own the common area. In establishing the crime of fraud, the State had the burden of proving this fact. Defendant's objection based upon N.M.R. Evid. 408 is also without merit. Rule 408 provides in part:

Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible . . . .

We interpret the rule to protect only those parties to a compromise. Therefore, because defendant was not a party to the compromise in the present case, she cannot avail herself of its protection. Additionally, since defendant was a partner of those who executed the compromise agreement, we conclude that Mrs. Crosby's testimony was relevant to defendant's knowledge and credibility concerning the partnership's lack of ownership in the common area. *See* *State v. Doak*, 89 N.M. 532, 554 P.2d 993 (Ct.App.1976).

■ Finally, defendant's argument on appeal is without merit. This argument is based partly on the claim that the testimony with respect to the reduction in price contributed to establishing the degree of crime charged. However, we have already ruled that, under the present facts, the value of the money received by defendant through her fraudulent representations is determinative of the degree of crime charged. Therefore, even if it may be conceded that the admitted testimony could lead the jury to conclude that the value of the common area to the Crosbys was over $2,500, this value is irrelevant in the face of our ruling. In addition, defendant claimed at trial that, because no misrepresentation had been made, she refused to negotiate for any price reduction. The admitted testimony corroborates this claim. Accordingly, although Mrs. Crosby's testimony could lead the jury to conclude that the area was not owned by the partnership, it could as easily lead to the conclusion that defendant believed the area to be so owned. Given the

crucial element of intent in the crime of fraud and this latter conclusion, we conclude that the admitted testimony may have strengthened defendant's defense. Accordingly, we rule that defendant's assertion of prejudicial error is not well taken.

■ In arriving at our holding that the court properly admitted Mrs. Crosby's testimony, we note that the State asserts that defendant waived her objection to the admission of the testimony by moving for the admission of State's Exhibit # 47. This exhibit contained the agreement between the Crosbys and Denton and Scarborough for the $6,500 reduction in purchase price. We conclude that the State's assertion is without merit. The law in this jurisdiction is that if improper evidence is admitted over objection, resort may be had to like evidence without waiving the original error. *State v. Kile*, 29 N.M. 55, 280 P. 346 (1923); *see Sayner v. Sholer*, 77 N.M. 579, 425 P.2d 743 (1967). In addition, defendant expressly stated that she was not waiving her objection to Mrs. Crosby's testimony when she moved for the admission of the exhibit. Therefore, we conclude that defendant committed no waiver.

Based upon the foregoing, we affirm defendant's convictions and remand for sentencing as to count I.

It is so ordered.

WALTERS, J., concurs.

SUTIN, J., dissenting.

SUTIN, Judge (dissenting).

I dissent.

Defendant, Linda Martinez, was convicted of fraud in the sale of real property to John and Kathrine Crosby in violation of § 30–16–6, N.M.S.A. 1978. It reads in pertinent part:

Fraud consists of the intentional misappropriation or taking of anything of value which belongs to another by means of fraudulent conduct, practices or representations.

\* \* \* · \* \* \*

Whoever commits fraud when the value of the thing misappropriated or taken exceeds twenty-five hundred dollars ($2,500) is guilty of a third degree felony.

The essential elements of this crime are (1) that defendant misrepresented a fact to the victim *intending to deceive or cheat the victim,* (2) because of the misrepresentation and the victims' reliance on it, defendant obtained over $2,500, and (3) this money belonged to someone other than the defendant. U.J.I.Crim. 16.30.

Linda sold land to four buyers with the understanding that each purchaser would jointly share an undivided and unspecified interest in a portion of the land along the Vallecitos River, which portion is called "The Common Area." "The Common Area" fronts on land purchased by Crosby, McConnell, Davis-Francis and Teal. A map of the land and "The Common Area" is attached here as an appendix. The L-shaped portion is "The Common Area" and is estimated at two acres in size. This common area is the basis of the fraud indictment because Linda misrepresented its ownership.

The land, exclusive of "The Common Area" was owned by five persons, one of which was Linda. The sale was effected and Crosby made a down payment of $22,-500 on a purchase price of $76,500. A quit-claim deed of "The Common Area" was submitted to Crosby, but it was invalid.

"The Common Area" was valued at $800 per acre or $1,600 and Crosby's interest was valued at $400. No other evidence was presented as to any loss, detriment or injury suffered by Crosby. Except for "The Common Area," Crosby received everything bargained for.

The only question to decide is:

Because of the misrepresentation and Crosby's reliance on it, did Linda obtain over $2,500 that belonged to Crosby?

In essence, § 30–16–6 is an offense of deceiving or cheating by false pretenses.

At common law obtaining money by false representation of a fact was not a crime. [Citation omitted.] This being true, many States * * * early passed statutes for the purpose of preventing perpetration of flagrant frauds, and these statutes have been denominated * * * as a false pretense statute. In construing these statutes their construction must be strict and nothing which is not within the plain words of the statute will be given meaning against a defendant, but there will be a liberal construction in favor of the defendant. *Mullican v. State,* 210 Tenn. 505, 360 S.W.2d 35, 38 (1962).

To "cheat" a victim is to defraud, deceive or swindle the victim out of something of value. To defraud a victim requires proof of a loss, detriment or injury to the victim. *Baskerville v. State,* 23 Md.App. 439, 327 A.2d 918 (1974); *Tumminello v. State,* 10 Md.App. 612, 272 A.2d 77 (1971); *Daniel v. State,* 63 Ga.App. 12, 10 S.E.2d 80 (1940); *McGhee v. State,* 97 Ga. 199, 22 S.E. 589 (1895); *State v. Gerich,* 138 Conn. 292, 83 A.2d 488 (1951); *State v. Palmer,* 50 Kan. 318, 32 P. 29 (1893); *Walker v. State,* 89 Ga.App. 101, 78 S.E.2d 545 (1953); *Bruce v. State,* 217 Miss. 368, 64 So.2d 332 (1953).

In *Palmer,* the court said:

The mere obtaining of money under false pretenses does not alone constitute a crime. The money must be obtained to the injury of some one. *Though money is obtained by misrepresentation, if no injury follows, no crime is accomplished.* In this case the defendant was undoubtedly guilty of many flagrant misrepresentations and other dishonest acts; but if all such misrepresentations and dishonorable acts did not actually result in injury to McClelland, she cannot be convicted in this state simply because, upon the face of things, she is bad. [Emphasis added.] [32 P. at 30.]

The only way in which a defendant can obtain over $2,500 from a victim by misrepresentation is to cause the victim to suffer a loss, detriment or injury in excess of $2,500.

The State attempted to establish this loss by evaluating the land and "The Common

Area" as one purchase and the monetary loss to the land by reason of the loss of "The Common Area," but the expert testimony was stricken from the record. In other words, the State failed to prove that Linda cheated Crosby and obtained more than $2,500 thereby.

Judge Lopez relies upon *State v. Forshee*, 588 P.2d 181 (Utah 1978). The Utah statute reads in pertinent part:

> "(1) A person commits theft if he obtains or exercises control over property of another by deception and with a purpose to deprive him thereof."

This statute is akin to larceny. It naturally follows that " * * * the degree of the crime must be measured by the value of the property obtained by the defendant as a result of the deception, rather than the value of any property received by the victim." [588 P.2d at 184.] "Accordingly," the Lopez opinion says "because defendant and her partners received $20,000 from Francis and Davis and $22,500 from the Crosbys, we hold that there was sufficient evidence to establish fraud over $2,500." These monies were not received as a result of the deception. They were down payments made on the purchase price. It does not establish fraud over $2,500.

*Forshee* relied upon *People v. Ross*, 25 Cal.App.3d 190, 100 Cal.Rptr. 703 (1972) in which the defendant was prosecuted for grand theft under Section 484 of the Penal Code. See also, *State v. Aurgemma*, 116 R.I. 1425, 358 A.2d 46 (1976) where the false pretense statute is designated as "Larceny"; *State v. Mills*, 96 Ariz. 377, 396 P.2d 5 (1964) where the statute is designated as "Theft"; *Stewart v. State*, 256 Ark. 619, 509 S.W.2d 298 (1974) where the statute is designated as "Larceny."

Under larceny, the pecuniary loss of a victim is immaterial.

This case should be reversed and Linda discharged.