164 P.3d 506 (2007)
STATE of Washington, Respondent,
v.
John S. GEORGE and Tommy B. George, and each of them, Petitioners.
No. 78782-4.
Supreme Court of Washington, En Banc.
Argued May 8, 2007.
Decided August 9, 2007.
Jeffrey Healy Smith, Law Offices of Jeffrey H. Smith, Seattle, WA, for Petitioners.
Michael Paul Mohandeson, Deborah A. Dwyer, James Morrissey Whisman, King County Prosecutor's Office/Appellate Unit, Seattle, WA, for Respondent.
*507 CHAMBERS, J.
¶ 1 Father and son John and Tommy George attempted to sell a pickup truck to an undercover Seattle police officer for $5,500. The Georges fraudulently misrepresented the condition and history of the truck in their attempt to sell it. They were convicted of attempted first degree theft by deception. The Georges contend that the State failed to prove the market value of the truck and therefore failed to prove attempted theft in the first degree. The State responds that because this case involved theft of money, it need not prove the market value of the truck. Rather, the measure of value for purposes of the degree of theft is the value of the property attempted to be obtained by deceit. We agree with the State and affirm the convictions.

I
¶ 2 In June 2003, Tommy George approached Jerome Potter, asking if he was interested in selling his 1974 Chevrolet half-ton pickup truck. A problem with the rear wheel differential rendered the truck inoperable for the two years prior to the sale, during which time it sat uncovered, outside of Potter's home. Potter disclosed the mechanical problems and further informed Tommy George that he had replaced the old engine, a "350," with a "400." Potter said the truck had 185,000 miles on it  although the five digit odometer read 70,000.[1] Potter informed George that he had purchased the truck used and that it had sat outside inoperable for two years. Tommy George's father, John, returned a few days later to negotiate, and he eventually bought the truck for $1,800.
¶ 3 The Georges placed an ad in The Seattle Times that read: "1974 Cheyenne Super ½ T, 1 ownr, 350 v8, AT, tow pkg. All stock and original gar'd. 70 K mi very nice $5,500." Clerk's Papers at 7. The Seattle Police Department reads The Seattle Times advertisements searching for fraudulent offers that appear "too good to be true." Report of Proceedings (RP) (Sept. 8, 2004) at 79-80. Detective Daniel Stokke believed he had found such an advertisement placed by the Georges. He elicited the assistance of Detectives Richard O'Donnell and Dana Duffy who impersonated interested buyers. Detective O'Donnell spoke with Tommy George who reported that his father, John George, was the original and sole owner, that the truck had always been garaged, was in "perfect condition," and had 70,000 miles on it. RP (Sept. 9, 2004) at 6. John George confirmed, when he met with Detective O'Donnell, that he was the sole owner, the truck had "always been in the garage," had 70,000 miles on it, and was in "great shape." Id. at 9, 12. The Georges asked for $5,500, which Detective O'Donnell agreed to pay. John George required some time to retrieve the title, so the parties arranged to complete the sale the following day. The officers arrived the next day with a cashier's check and, after the sale was completed, the officers arrested the Georges.
¶ 4 The State charged the Georges with attempted first degree theft by deception. Because of the vehicle's age, Detective Stokke could not find standardized pricing information. At a joint trial, the only evidence the State presented that could prove the market value of the truck was the amount the Georges paid Potter. The Georges offered no evidence on the value of the truck; in fact, the Georges presented no evidence in their defense. After the State rested, the Georges moved for dismissal. The Georges argued a prima facie case had not been established because after they purchased the truck they made improvements to the truck and the State offered no evidence showing that the truck as sold was worth less than the sales price. The Georges alleged the State merely established the elements of attempted theft in the third degree, which punishes theft of property worth less than $250. The trial court denied their motion but did give the jury lesser included instructions on attempted second and third degree theft.
*508 ¶ 5 Defense counsel for John George argued to the jury, "[The police] got something of value in exchange for their $5,500. The State has failed to prove how much a value that truck has, so by failing to prove that they can't prove to you that it's more than $250." RP (Sept. 9, 2004) at 79. Defense counsel for Tommy George drew an analogy to a jeweler who lies about a diamond and sells it for $10,000  a dollar more than it is worth. Criticizing the claim that the jeweler stole $10,000, instead of a dollar, he remarked, "[t]he law can't allow that, that's not logical. It's an absurd result." Id. at 90-91. The State, in response, argued that the Georges committed attempted theft by their efforts to deprive the buyer of $5,500 through deception. The property they tried to steal was the $5,500 cashiers check. The jury convicted both Georges of attempted theft in the first degree.
¶ 6 The Court of Appeals affirmed the convictions. State v. George, 132 Wash.App. 654, 133 P.3d 487 (2006). This court granted review. State v. George, noted at ___ Wash.2d ___, 153 P.3d 196. Although the Georges argued in their petition for review that the theft statute is unconstitutionally vague, and that the evidence was insufficient to prove theft, we limited our review to the question of "whether `value' for purposes of the degree of the theft is determined by the amount of money received or the difference between the amount of money received and the market value of the item sold." Wash. State Supreme Court Order (Jan. 13, 2007).

II
¶ 7 We are asked to interpret the word "value" within the theft statute. This is a question of law. Review is de novo. State v. J.P., 149 Wash.2d 444, 449, 69 P.3d 318 (2003).

III
¶ 8 Theft by deception means "[b]y color or aid of deception to obtain control over the property or services of another or the value thereof, with intent to deprive him or her of such property or services." RCW 9A.56.020(1)(b). Theft in the first degree is defined as theft of "[p]roperty or services which exceed(s) one thousand five hundred dollars in value." RCW 9A.56.030(1)(a). Theft in the second degree is defined as theft of property with a value less than $1,500, but more than $250. RCW 9A.56.040(1)(a). Theft in the third degree is theft of property with a value less than $250. RCW 9A.56.050(1)(a). "Property," as used in RCW 9A.56.030(1)(a), refers to the "property or services of another" that a defendant has stolen. See RCW 9A.56.020(1)(c). "Value" is defined as "the market value of the property or services at the time and in the approximate area of the criminal act."[2] RCW 9A.56.010(18).
*509 ¶ 9 The Georges argue there was no evidence of the actual loss to the potential victim because there was no evidence of the value of the truck after they repaired it. The Georges reason that the truck might be worth even more than the $5,500 the police agreed to pay for it. However, the Georges misread the statute. A careful reading of the statute leads to the conclusion that the actual value of the truck is not relevant to the measure of value of the stolen property. We agree with the Court of Appeals that the Georges would have an excellent argument if they were charged with stealing the truck. But they were not. Instead, they were charged with attempted theft by deception for obtaining a $5,500 cashiers check. The cashiers check was the "property of another" they intended to obtain by aid of deception, and it cannot be disputed that its value exceeds $1,500.[3] We also agree with the Court of Appeals that the legislature did not intend "an inquiry into the thief's net gain or the victim's net loss." George, 132 Wash.App. at 661, 133 P.3d 487. In deception cases, the statute looks only to the value of the property obtained, not the net result of the exchange. See RCW 9A.56.020(1)(b). Here, the property the Georges attempted to obtain was a valid cashiers check for $5,500. The Court of Appeals correctly observed:
theft by color or aid of deception means that "the deception operated to bring about the obtaining of property or services; it is not necessary that deception be the sole means of obtaining the property or services." In drawing the line between criminal conduct and sharp business practices, the legislature clearly contemplated that something in addition to pure deception will be involved. Indeed, in many acts of theft by deception, something falsely described is given in exchange to induce the transaction.
George, 132 Wash.App. at 660, 133 P.3d 487 (footnote omitted) (quoting RCW 9A.56.010(4)).

IV
¶ 10 Our precedent supports the Court of Appeals' reading of theft by deception. In State v. Sargent, 2 Wash.2d 190, 192, 97 P.2d 692, 100 P.2d 20 (1940), the defendant, Sargent, lied to an investor inducing the purchase of shares of mining company stock less attractive to investors than Sargent purported them to be. Sargent claimed the mining company had interests in land "within four hundred feet" of a mine with a proven track record and that a "strong financial company in New York" was poised to purchase a large portion of the stock. Id. at 192-93, 97 P.2d 692. Neither claim was accurate, yet the State offered no evidence proving the value of the stock. This court observed:
It will be noted that there is no allegation that Marion was defrauded, in the sense that he suffered any pecuniary loss. For aught that is charged, he may even have gained by the transaction. The appellant urges that this vitiates the information; but, as we read the statute, the gist of the offense is obtaining property from an owner by the use of false and fraudulent representations or pretenses, and whether or not the owner suffered a pecuniary loss is immaterial.
Id. at 193, 97 P.2d 692. In Sargent, we recognized that the substance, or "gist," of the crime is the victim's loss of property by deceptive methods and that the actual pecuniary loss is irrelevant. Id. Sargent addressed a different statute, Rem.Rev.Stat. § 2601, but the language is indistinguishable from our current law. The statute in effect in 1940 read:

*510 Every person who, with intent to deprive or defraud the owner thereof 
. . . .
(2) Shall obtain from the owner or another the possession of or title to any property . . . by color or aid of any fraudulent or false representation, personation or pretense or by any false token or writing . . .
. . . .
Steals such property and shall be guilty of larceny.
Rem.Rev.Stat. § 2601. The Georges do not point to, nor does our examination of the legislative history reveal, the legislature's rejection of our reasoning in Sargent. Although the current statute, a product of the 1975 legislature, adopts a different structure and language, the essential elements of theft are the same: "obtain[ing] control over the property or services of another . . . [b]y color or aid of deception." RCW 9A.56.020(1)(b). We presume the legislature is aware of judicial interpretation of statutes. State v. Ose, 156 Wash.2d 140, 148, 124 P.3d 635 (2005). The changes from Rem.Rev.Stat. § 2601 to RCW 9A.56.020(1)(b) do not suggest a departure from the rule in Sargent, rather, their consistency implies an endorsement of Sargent.
¶ 11 A variety of jurisdictions have considered this issue and agree with the reasoning in Sargent. See, e.g., State v. Mills, 96 Ariz. 377, 381, 396 P.2d 5 (1964) (adopting the rule of no requirement of pecuniary loss so long as the victim has parted with his property: "Once the victim has parted with his property in reliance on a false representation, it is immaterial whether whatever he got in return is equal in exchange value to that with which he parted."); People v. Ross, 25 Cal. App.3d 190, 195, 100 Cal.Rptr. 703 (1972) (Upholding the rule where used car dealer had rolled back odometer and subsequently sold those cars to dealerships: "`If the victim is induced to part with money or property in exchange for other property fraudulently misrepresented, the crime is committed; it is not a defense that no permanent loss occurred; the victim is defrauded if he did not get what he bargained for, even though he may not have suffered a net financial loss.'" (quoting People v. Brady, 275 Cal.App.2d 984, 994-95, 80 Cal.Rptr. 418 (1969))); State v. Stephens, 263 Kan. 658, 953 P.2d 1373 (1998) (applying rule where defendant misrepresented amount of gross receipts earned by business sold to victims); Lane v. State, 60 Md.App. 412, 483 A.2d 369 (1984) (applying rule where defendant secured a loan with mortgages misrepresented to be of greater value); State v. Roche, Inc., 246 Neb. 568, 520 N.W.2d 539 (1994) (applying rule where defendant sold copy machines with meters rolled back); State v. Martinez, 95 N.M. 795, 801, 626 P.2d 1292 (1979) (adopting rule where defendant misrepresented quantum and quality of real estate involved in sale); State v. Aurgemma, 116 R.I. 425, 358 A.2d 46 (1976) (applying rule where a remodeling contractor misrepresented ability to complete all aspects of remodel, but where some work had been performed); La Moyne v. State, 53 Tex.Crim. 221, 111 S.W. 950 (1908) (measuring the degree of theft by the amount obtained by defendant, regardless of any benefit received by victim); State v. Forshee, 588 P.2d 181 (Utah 1978) (adopting rule where car dealer rolled back odometer and sold to unsuspecting customers).
¶ 12 The Georges call our attention to an unusual case, State v. Lee, 128 Wash.2d 151, 904 P.2d 1143 (1995). Lee had been in the process of purchasing a house that was in such poor condition as to be uninsurable. Id. at 153, 904 P.2d 1143. Perhaps in an attempt to make the house insurable, and prior to closing, Lee made significant improvements to the property. Id. After making the repairs to the property, Lee rented it out. Id. at 153-54, 904 P.2d 1143. When the actual owner learned that tenants were living in the house, and that rental income was going to Lee, the sale fell through. Id. at 154, 904 P.2d 1143. The State charged Lee with second degree theft, either from the tenants or from the Red Cross (which had facilitated the deal). Id. at 157, 904 P.2d 1143. We vacated Lee's conviction on the grounds that the State had presented insufficient evidence that any victim had actually lost $250 or more. Id. at 163-64, 904 P.2d 1143. We did not, and had no occasion to, reach whether an offset was appropriate given the relationship between the four parties (the owner who received exactly the same *511 rental income he was expecting  nothing  and the tenants and charity that received exactly the same housing  one month  contracted for). Id. at 164, 904 P.2d 1143.
¶ 13 By contrast, in this case, there was sufficient evidence to find that the Georges had deprived a victim of more than $1,500.

V
¶ 14 We conclude that the higher the stakes of the transaction, the more severely our legislature intends the deception to be punished. The statute criminalizes deceptive practices compelling people to part with their property when they otherwise would not. The magnitude of the crime is based, as with every other theft, on the value of the property a victim loses. For purposes of a criminal charge, there is no difference between a thief who, through deception or fraud, hands over something in exchange for the victim's property and a thief who surrenders nothing. The legislature could have defined value in the context of a sale as the difference between what was obtained and what was given up, but it has not. We affirm the Court of Appeals.
WE CONCUR: GERRY L. ALEXANDER, C.J., CHARLES W. JOHNSON, SUSAN OWENS, BARBARA A. MADSEN, MARY E. FAIRHURST, RICHARD B. SANDERS, JAMES M. JOHNSON, BOBBE J. BRIDGE, JJ.
NOTES
[1] The odometer showed only five digits and at every 100,000 miles it returned to a reading of 0. At the time of the sale, the truck had 70,000 miles on it; Potter conceded upon cross-examination that the vehicle must have had 170,000 miles, rather than 185,000 miles.
[2] RCW 9A.56.010(18) reads in full:

Value. (a) "Value" means the market value of the property or services at the time and in the approximate area of the criminal act.
(b) Whether or not they have been issued or delivered, written instruments, except those having a readily ascertained market value, shall be evaluated as follows:
(i) The value of an instrument constituting an evidence of debt, such as a check, draft, or promissory note, shall be deemed the amount due or collectible thereon or thereby, that figure ordinarily being the face amount of the indebtedness less any portion thereof which has been satisfied;
(ii) The value of a ticket or equivalent instrument which evidences a right to receive transportation, entertainment, or other service shall be deemed the price stated thereon, if any; and if no price is stated thereon, the value shall be deemed the price of such ticket or equivalent instrument which the issuer charged the general public;
(iii) The value of any other instrument that creates, releases, discharges, or otherwise affects any valuable legal right, privilege, or obligation shall be deemed the greatest amount of economic loss which the owner of the instrument might reasonably suffer by virtue of the loss of the instrument.
(c) Except as provided in RCW 9A.56.340(4) and 9A.56.350(4), whenever any series of transactions which constitute theft, would, when considered separately, constitute theft in the third degree because of value, and said series of transactions are a part of a criminal episode or a common scheme or plan, then the transactions may be aggregated in one count and the sum of the value of all said transactions shall be the value considered in determining the degree of theft involved.
For purposes of this subsection, "criminal episode" means a series of thefts committed by the same person from one or more mercantile establishments on three or more occasions within a five-day period.
(d) Whenever any person is charged with possessing stolen property and such person has unlawfully in his possession at the same time the stolen property of more than one person, then the stolen property possessed may be aggregated in one count and the sum of the value of all said stolen property shall be the value considered in determining the degree of theft involved. Thefts committed by the same person in different counties that have been aggregated in one county may be prosecuted in any county in which one of the thefts occurred.
(e) Property or services having value that cannot be ascertained pursuant to the standards set forth above shall be deemed to be of a value not exceeding two hundred and fifty dollars;
[3] A cashiers check is a "written instrument[]" with a "readily ascertained market value." RCW 9A.56.010(18)(b).