IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 33673-5-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GARY BRUCE FARNWORTH II, | ) | PUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

FEARING, C.J. — Gary Farnworth garnered forty-six payments of Washington

Department of Labor and Industries (DLI) worker compensation benefits by certifying he

engaged in no employment at a time when he labored at a car sales lot. The State

aggregated the many thefts into three counts of first degree theft. Farnworth appeals, on

numerous grounds, from two convictions for first degree theft. He argues that the trial

court abused its discretion when denying a trial continuance, when admitting hearsay

evidence, and when excluding some of his evidence. He also contends that the State

lacked authority to aggregate the thefts into more than one first degree theft charge. We

agree with Farnworth's aggregation argument and vacate one of his convictions. We

disagree with Farnworth's other arguments and affirm the one conviction for first degree

theft.

## FACTS

This prosecution arises from defendant Gary Farnworth's receipt of worker

compensation time loss benefits. On September 10, 2007, Gary Farnworth injured his

back while working as an apprentice ironworker for Storm Steel, Inc. He filed a claim

with DLI. DLI commenced paying Farnworth time loss benefits.

In order for Gary Farnworth to garner time loss benefits, DLI demanded that he

complete and sign worker verification forms. Each form read:

> Due to my work-related injury/illness, I didn't work and I wasn't
> able to work from ____ to ____. This means you didn't perform any type
> of work—paid or unpaid—such as volunteer work, self-employment,
> COPES or CHORE Services. . . .
>     . . . .
> By signing below, I certify under penalty of perjury under the laws
> of the state of Washington that the foregoing is true and correct and further
> *that*: I understand that if I make a false statement about my activities or
> physical condition, I will be required to refund my benefits and I may face
> civil or criminal penalties. I understand I must immediately notify my
> claim manager if I perform any work (paid or unpaid), if my doctor releases
> me for work, if I am incarcerated and under sentence, or if the custody of
> my children changes.

Ex. P8. Gary Farnworth completed and signed at least ten worker verification forms

between September 2010 and July 2012.

Beginning in April 2010, Gary Farnworth assisted his friend, Terry Smith, at

Smith's used car dealership, TCS Auto Wholesale. Farnworth daily opened the car lot

2

gates, unlocked the office front door, accepted loan payments from customers, and received mail. During this time, Farnworth reported to DLI, his physicians, and his vocational counselor that he was unemployed. Farnworth underwent back surgery on November 1, 2010, and January 9, 2012. When recuperating from surgery, he missed work at TCS Auto from November 1 to November 6, 2010, and from January 9 to February 13, 2012.

Gary Farnworth received and cashed forty-six warrants for time loss payments from DLI between November 2010 and October 2012. A payment order accompanied each warrant and identified the pay rate and time period for the warrant's compensation. Each payment represented two weeks' worth of benefits in the sum of $1,626.80 $1,676.92, $1,662.60, or $1,739.34. Each payment order admonished its recipient not to cash the warrant if he performed any work during the covered period.

On August 10, 2012, DLI received a tip that Gary Farnworth worked while receiving time loss benefits. DLI commenced an investigation. On September 25, 2012, DLI recorded Farnworth showing DLI Investigator Matt McCord five vehicles for sale on the TCS Auto Wholesale lot. Department of Licensing sales records confirmed that Farnworth served as general manager for TCS Auto from April 2010 through October 2, 2012.

On October 9, 2012, DLI confronted Gary Farnworth with evidence of fraud. With his attorney present, Farnworth confessed to investigator Matt McCord that he

3

labored at TCS Auto Wholesale starting in April or May 2010 and that he worked six days a week, Monday through Saturday. Farnworth further conceded that he signed a worker verification form declaring that he had not worked during the period of time he labored at TCS Auto.

Despite concluding in October 2012 that Gary Farnworth worked at TCS Auto Wholesale, DLI continued to pay Farnworth time loss compensation. DLI ended time loss payments on February 14, 2013, when DLI found Farnworth able to work.

On February 15, 2013, Gary Farnworth assumed a full-time, paid position as an automobile salesperson with TCS Auto Wholesale. This position paid less than his job as an ironworker at Storm Steel, Inc.. Due to the disparity in income, DLI's Board of Industrial Insurance Appeals ruled that Farnworth incurred a loss of earning power, within the meaning of RCW 51.32.090(3), from February 15 through April 29, 2013. The board also concluded that the industrial injury proximately caused the loss and the loss exceeded more than five percent of his earning power at the time of his back injury.

PROCEDURE

The State of Washington charged Gary Farnworth with three counts of first degree theft by color or aid of deception. Each count alleged theft over different time frames: February 15, 2010 to January 4, 2011; November 6, 2010 to January 14, 2012; February 13, 2012 to October 5, 2012. To arrive at first degree theft charges, the State aggregated a series of payments to Farnworth from DLI. In its last information, the second amended

4

information, the State alleged that, for purposes of aggregation of discrete thefts, Farnworth engaged in a "series of transactions which were part of a criminal episode or common scheme or plan." Clerk's Papers (CP) at 463. During the proceeding, Farnworth argued that he volunteered rather than worked at the auto dealership, he never intended to deceive DLI, and DLI did not rely on any deception.

Before trial, the State filed notice of its intent to offer certified business records as allowed by RCW 10.96.030. Gary Farnworth never responded to the notice. On August 28, 2014, the State filed its witness list, which included "Alan Gruse, LNI Fraud Adjudicator." CP at 31. One month after the court-ordered deadline for filing a witness list, Farnworth filed a witness list that included Jerry Myron, a purported expert witness. The State attempted to interview Myron, but he refused an interview.

Remember that DLI, beginning in February 2013, paid time loss benefits to Gary Farnworth but at a lower rate than when DLI lacked knowledge of the employment at TCS Auto Wholesale. Farnworth's income as a used car salesperson deceeded his remuneration as an ironworker. The State moved to exclude evidence that DLI could or would have paid time loss benefits to Farnworth from 2010 to 2012 if Farnworth had reported his employment. The trial court granted the motion in limine on the rationale that whether DLI might have paid a lower sum of time loss benefits had Farnworth been honest was irrelevant to charges.

Trial was scheduled to begin June 1, 2015. According to Gary Farnworth, the

5

prosecution disclosed J.R. Wyatt, a vocational counselor, as an expert witness for the first time on May 22, 2015, and the State did not then disclose Wyatt's opinions. Accordingly, Farnworth argued a motion, on May 27, 2015, to continue the trial. Farnworth maintained that he wished to hire a rebuttal expert witness. The State responded that Wyatt was a fact, not an expert, witness and that the State a half-year earlier provided discovery concerning Wyatt's testimony. On May 27, the trial court denied the motion to postpone the trial date.

Gary Farnworth renewed his motion to postpone the June 1, 2015 trial date at the commencement of trial on June 1. Farnworth did not then complain about any late disclosure of a State expert witness. Farnworth mentioned the inability to subpoena two witnesses and to interview one witness. The trial court denied the renewed motion to postpone the trial date.

During trial, the State called as a witness DLI Workers Compensation Fraud Adjudicator Alan Gruse. Through Gruse, the State sought to admit as exhibits payment orders prepared by DLI claims managers. The claims managers who prepared the orders did not testify in the case. Gary Farnworth objected to admission of the payment orders on the grounds of hearsay, lack of authentication, and the confrontation clause. The trial court overruled the objection. When the State moved to admit exhibit P104, a payment order, the following testimony and colloquy transpired:

    MS. MILNOR [Prosecutor]: State would offer Plaintiff's Exhibit

104.

MR. SMITH [Defense Counsel]: Permission to voir dire, Your Honor.

THE COURT: You may.

MR. SMITH: Thank you.

Q (By Mr. Smith) Mr. Gruse, this is a payment order, correct? Document you're referring to is a payment order?

A Yes, it is.

Q Right. You said that's a legal document; is it not?

A It is.

Q All right. And this is a legal document created by the claims manager, correct?

A Yes.

Q All right. And at no time during the period February 15, 2010 through October 5, 2012, were you a claims manager in this case, correct?

A I was not a claims manager in this case, no.

Q All right. And the claims manager in this particular document at the time was Vicky Damora, correct?

A That is correct.

. . . .

MR. SMITH: Thank you, Your Honor. I have an objection on hearsay. It violates right to confrontation, as well as relevance in any—it is irrelevant, substantially outweighed by the prejudicial effect.

THE COURT: I'll note your objection. The Court is going to admit P104.

Report of Proceedings (RP) (June 9, 2015) at 994-95. Vicky Damora never testified at trial.

Before the jury, the State asked Alan Gruse whether DLI relied on the worker verification forms signed by Farnworth when paying him time loss compensation benefits. The defense unsuccessfully objected to this question on the basis of hearsay, the confrontation clause, and lack of a foundation. Gruse answered in the affirmative.

During trial, the State called as a witness Department of Licensing Custodian of

7

Records Richard Letteer. Through Letteer, the trial court admitted as exhibits

Department of Licensing sales transaction records from February 15, 2010 to November

20, 2012 purportedly signed by Gary Farnworth as an agent for the dealership, TCS Auto

Wholesale. Farnworth objected to the exhibits on grounds of hearsay, lack of

authentication, and the confrontation clause. Letteer admitted he never compared all of

the Department of Licensing documents introduced as exhibits to the originals on file

with the department, he did not know the criteria used to request and select the

documents, and he did not gather the documents himself. Letteer testified that Susan

Mitchell assembled the exhibits. Mitchell did not testify at trial. A certification

accompanying the exhibits stated that Mitchell served as Department of Licensing forms

and records analyst, she was the custodian of records, and as part of her duties, she

researched and copied the records.

The State also called as a witness DLI investigator Matt McCord. During

McCord's cross-examination, Gary Farnworth attempted to elicit testimony about

McCord's involvement in a fraudulent Ponzi scheme. According to Farnworth, McCord

resigned from the Simi Valley, California police force in lieu of termination because of

participation in the scheme, and McCord, when subpoenaed to testify before a grand jury

on the subject, asserted his Fifth Amendment right not to incriminate himself. Out of the

presence of the jury, Farnworth moved for dismissal based on the State's purported *Brady*

violations. As part of the motion, Farnworth requested to voir dire McCord concerning

8

his behavior in order to perfect the trial record. The trial court denied the request to voir dire on the basis that McCord's involvement in fraud lacked relevance to Farnworth's prosecution. The trial court denied the motion to dismiss.

During trial, Gary Farnworth wished his witness, Jerry Myron, to testify that, during some of the charging period, DLI would have paid time loss compensation benefits even if it knew Farnworth worked at TCS Auto Wholesale, since Farnworth's pay before his injury exceeded his pay at the car dealership. The trial court precluded the testimony and commented:

> The statute for theft by deception does not focus on the net result of the defendant's benefit based on the amount that he might have legally received.
> Instead, theft by deception centers on the deceptive act and the value of the property obtained by that deceptive act, and it's not a defense under the *Casey* [decision] that he could have gotten benefits [no matter] what happened.
> So based on that, the Court is not going to allow him to testify to what he would have gotten.

RP (June 8, 2015) at 935.

After the State rested, Gary Farnworth moved to dismiss two counts of first degree theft by arguing the State improperly aggregated the small thefts. The State responded that it charged three different counts because of Farnworth's two surgeries respectively on November 1, 2010 and January 9, 2012. Farnworth missed work at TCS Auto Wholesale from November 1 to November 6, 2010 and from January 9 to February 13, 2012. The State maintained that Gary Farnworth was entitled to full time loss payments

9

during those absences. The respective charging periods covered before November 1,

2010, between November 6, 2010 and January 9, 2012, and after February 13, 2012. The

trial court denied the motion to dismiss two of the three counts.

The trial court instructed the jury. Jury instruction 10 read:

> Value means the market value of the property or services at the time
> and in the approximate area of the act.
> *Whenever any series of transactions that constitutes theft is part of a
> common scheme or plan,* then the sum of the value of all transactions shall
> be the value considered in determining the amount of value.

CP at 499 (emphasis added). Instructions 15, 16, and 17 constituted the respective to-

convict instructions for each count of theft in the first degree. Jury instruction 15 read:

> To convict the defendant of the crime of Theft in the First Degree as
> charged in Count I, each of the following five elements of the crime must
> be proved beyond a reasonable doubt:
> (1)  That during the period from February 15, 2010, through January
> 4, 2011, the defendant, by color or aid of deception, obtained control over
> property or services of the State of Washington or the value thereof;
> (2)  That the State of Washington, Department of Labor and
> Industries, relied on the defendant's deception in paying the benefits;
> (3)  That the property or services exceeded $5,000 in value;
> (4)  That the defendant intended to deprive the State of Washington
> of the property or services; and
> (5)  That any of these acts occurred in the State of Washington.
> If you find from the evidence that each of these elements has been
> proved beyond a reasonable doubt, then it will be your duty to return a
> verdict of guilty.
> On the other hand, if, after weighing all of the evidence, you have a
> reasonable doubt as to anyone of these elements, then it will be your duty to
> return a verdict of not guilty.

CP at 504. Jury instruction 16 substituted the dates of November 6, 2010 to January 14,

10

2012 in the first numbered paragraph of the instruction. Gary Farnworth does not complain about the overlapping of dates in jury instructions 15 and 16. Jury instruction 17 substituted the dates February 13, 2012 to October 5, 2012. As seen, none of the to-convict instructions included reference to a "common scheme or plan," despite the information charging Farnworth with a common scheme or plan and jury instruction 10 allowing aggregation of values only with a common scheme or plan. Farnworth submitted jury instructions that included the element of "common scheme or plan" in the elements instructions, but the trial court declined to employ Farnworth's proposed instruction. Farnworth objected to the court's to-convict instructions.

The jury returned a verdict of not guilty for count I, but guilty verdicts for counts II and III. The jury also found beyond a reasonable doubt that each crime of conviction constituted a major economic offense or series of offenses. The trial court sentenced Gary Farnworth to two concurrent sentences of twelve months of electronic home monitoring and awarded DLI restitution of $76,092.59. The jury finding of a major economic offense did not influence the sentence since the trial court did not impose an exceptional sentence.

## LAW AND ANALYSIS

### Trial Continuance

Gary Farnworth assigns error to the trial court's refusal to grant his two requests, respectively on May 27 and June 1, 2015 for a trial continuance. He contends the trial

11

court erred when denying his motion because the State informed him on the eve of trial that Alan Gruse, a fraud adjudicator, would testify as an expert. He claims the court's refusal prevented him from obtaining a rebuttal witness and from preparing an adequate defense.

We reject the assignment of error primarily because of its counterfactual nature. When Gary Farnworth sought a trial continuance on May 27, he complained about the State's late disclosure of an unidentified expert witness. The State identified the witness as J. R. Wyatt, a factual witness, not an expert witness. Farnworth never mentioned the name Alan Gruse in response. When Farnworth asked for a trial continuance on June 1, he complained about being unable to subpoena and interview witnesses. He did not identify Gruse as a cause for a continuance. Generally, issues not raised in the trial court may not be raised for the first time on appeal. RAP 2.5(a); *State v. Nitsch*, 100 Wn. App. 512, 519, 997 P.2d 1000 (2000). Anyway, although the State misspelled Gruse's surname, the State disclosed Gruse as a witness nine months before trial.

Brady Violation

Gary Farnworth contends the trial court erred in failing to find a *Brady* violation when undisclosed evidence showed Matthew McCord participated in a California fraudulent Ponzi scheme. In turn, Farnworth assigns error to the trial court's failure to dismiss the charges because of this alleged misconduct of the State. The State responds that it did not violate its duty to disclose material evidence because the State did not

12

know of McCord's twenty-year past involvement in a California pyramid scheme. We agree with the State.

Under *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), the prosecution's suppression of evidence favorable to an accused and requested by the accused violates due process when the evidence is material either to guilt or to punishment irrespective of the good faith or bad faith of the prosecution. *Brady v. Maryland*, 373 U.S. at 87. Sometimes the prosecution must share information even without a request from the accused. In some situations evidence is obviously of such substantial value to the defense that fairness requires disclosure, even without a specific request. *United States v. Agurs*, 427 U.S. 97, 110, 96 S. Ct. 2392, 49 L. Ed. 2d 342 (1976). Furthermore, the State must disclose evidence possessed by law enforcement as well as evidence possessed by prosecutors. *State v. Mullen*, 171 Wn.2d 881, 894, 259 P.3d 158 (2011). The animating purpose of *Brady* is to preserve the fairness of criminal trials. *Morris v. Ylst*, 447 F.3d 735, 742 (9th Cir. 2006). Gary Farnworth does not enlighten us as to whether a request for information covered evidence of Matthew McCord's earlier conduct or whether Farnworth claims the State should have disclosed the information without a request.

A *Brady* violation consists of three elements: the evidence at issue must favor the accused, either because it is exculpatory, or because it impeaches a State witness; the State suppressed the evidence willfully or inadvertently; and prejudice must have ensued.

13

*Strickler v. Greene*, 527 U.S. 263, 281-82, 119 S. Ct. 1936, 144 L. Ed. 2d 286 (1999).

We address only the last element. Prejudice occurs when the result of the proceeding

probably would have differed if the evidence had been disclosed to the defense. *Strickler*

*v. Greene*, 527 U.S. at 280; *United States v. Bagley*, 473 U.S. 667, 682, 105 S. Ct. 3375,

87 L. Ed. 2d 481 (1985). Courts determine prejudice by analyzing the evidence withheld

in light of the entire record. *In re Personal Restraint of Sherwood*, 118 Wn. App. 267,

270, 76 P.3d 269 (2003); *Benn v. Lambert*, 283 F.3d 1040, 1053 (9th Cir. 2002).

Gary Farnworth conclusorily contends that the purported *Brady* violation

prejudiced him because he could not impeach Matthew McCord. But Farnworth does not

analyze whether evidence rules permitted introduction of McCord's purported

participation in a pyramid scheme. Farnworth presents no evidence that McCord

sustained a conviction for the alleged criminal behavior. Farnworth does not disclose the

alleged date of the wrongful behavior. The State mentions that any behavior occurred

twenty years earlier. Without a determination that the trial court would have allowed the

evidence, we cannot hold that Farnworth suffered any prejudice assuming a *Brady*

violation.

### Confrontation Clause

Gary Farnworth contends the trial court violated his Sixth Amendment right to

confront those who bear testimony against him. He argues Alan Gruse improperly

testified regarding DLI orders issued by claims managers who did not testify at trial.

14

Farnworth also complains about Richard Letteer's testimony regarding DLI sales transaction records. Farnworth does not repeat his trial objections of lack of foundation or hearsay outside of the context of the confrontation clause. The State responds that the documents do not qualify as testimonial evidence and thus fall outside the purview of the confrontation clause. We agree with the State.

This court reviews de novo an alleged violation of the confrontation clause. *State v. Jasper*, 174 Wn.2d 96, 108, 271 P.3d 876 (2012). Under the Sixth Amendment's confrontation clause, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. Even hearsay with an applicable exception becomes inadmissible in violation of the clause if it is *testimonial* hearsay. *Davis v. Washington*, 547 U.S. 813, 823, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006).

A declarant's out of court statement is testimonial if, in the absence of an ongoing emergency, the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution. *Davis v. Washington*, 547 U.S. at 822. The admission of testimonial hearsay statements of a witness who does not appear at a criminal trial violates the confrontation clause of the Sixth Amendment unless (1) the witness is unavailable to testify and (2) the defendant had a prior opportunity for cross-examination. *Crawford v. Washington*, 541 U.S. 36, 53-54, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004); *State v. Beadle*, 173 Wn.2d 97, 107, 265 P.3d 863 (2011); 5C KARL B.

15

TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE, § 1300.10, at 502 (6th ed. 2016).

*Crawford v. Washington*, the leading United States Supreme Court decision on the subject, did not comprehensively define "testimonial," but the opinion provided some guidance to lower courts. *State v. Chambers*, 134 Wn. App. 853, 860, 142 P.3d 668 (2006). *Crawford*'s few definitions of "testimonial" all contemplate formal statements given to police to help their investigations or formal testimony in a court setting. *Crawford v. Washington*, 541 U.S. at 51-52. *Crawford* specifically distinguished these formal statements from casual remarks. *State v. Chambers*, 134 Wn. App. at 862.

In *State v. Chambers*, our court summarized three nonexclusive definitions for "testimonial" offered by *Crawford*:

> (1) ex parte in-court testimony or its functional equivalent, such as affidavits, custodial examinations, and prior testimony that the defendant was unable to cross-examine; (2) extrajudicial statements contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions; and (3) statements made under circumstances that would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.

*State v. Chambers*, 134 Wn. App. at 860-61.

We isolate the challenged documents into three categories: the worker verification forms that Gary Farnworth completed and signed, the payment orders prepared by DLI claims managers, and the Department of Licensing sales transaction records signed by Farnworth as an agent of TCS Auto Wholesale. The first and third category cannot fall

16

under the rubric of the confrontation clause because Gary Farnworth signed the documents. In other words, the records contain Farnworth's statements, not the statements of a witness absent from trial.

Although the confrontation clause applies to statements made by a witness against a defendant, a defendant does not have the right to confront his own statements. *State v. Far West Water & Sewer Inc.*, 224 Ariz. 173, 228 P.3d 909, 931 (Ariz. Ct. App. 2010). A defendant cannot claim a confrontation clause violation if the court admits the defendant's own out of court statements. *United States v. Moran*, 759 F.2d 777, 786 (9th Cir. 1985); *United States v. Rios Ruiz*, 579 F.2d 670, 676 (1st Cir. 1978). The right of confrontation exists as to accusations of third parties implicating a criminal defendant, not a criminal defendant implicating himself. *State v. Far West Water & Sewer Inc.*, 228 P.3d at 931.

DLI claims managers prepared each payment order, our second category, in the ordinary course of business. The managers readied the orders long before the State sought to prosecute or even investigate Gary Farnworth's receipt of benefits. If the managers had contemplated Gary Farnworth committing fraud, the managers might have remotely anticipated the use of the orders in a criminal prosecution. But we consider the law to require more than a hypothetical possibility of the utilization of a record for prosecution. At the time of preparing the payment orders, the managers had no reason to believe that Gary Farnworth would commit fraud. The managers prepared the orders in

17

the ordinary course of business merely to document payment. In cases in which the court holds records to violate the confrontation clause, parties prepared the records after the commencement of a criminal investigation.

*State v. Jasper*, 174 Wn.2d 96 (2012), upon which Gary Farnworth relies, confirms our analysis of the confrontation clause. Our state high court addressed two categories of records: (1) a certified statement from a Department of Licensing legal custodian of driving records indicating that defendants' respective driver's licenses were suspended or revoked on relevant dates and that diligent search of records indicated that driving privileges had not been reinstated, and (2) a certified letter from the supervisor of records for the Department of Labor and Industries stating that a search of records indicated that there was no previous or current contractor registration for defendant. The court held each category to be testimonial in nature for confrontation clause purposes. Nevertheless, the respective government departments prepared the statements after the beginning of an investigation of the respective defendants and for the purpose of use in court.

## Constitutional Right to Present a Defense

Gary Farnworth contends that the trial court violated his federal and state constitutional rights by precluding him from presenting a defense. He emphasizes that he attempted to defend the theft charges by showing DLI would have paid him worker compensation, although at a lower rate, even if he did not falsely certify unemployment.

18

The trial court instructed Farnworth not to discuss the validity of his worker compensation claim, restricted argument on the amount of time loss payments Farnworth would have received without the deception, and denied his request to introduce expert testimony from Jerry Myron of his continued disability despite work as a car salesman. We reject Farnworth's argument because the possibility that DLI would have paid him at a lower rate if he told the truth does not reduce the degree of his culpability. Therefore, the proffered evidence lacks relevance to the charges.

We first address constitutional provisions forwarded by Gary Farnworth. We will later review evidence rules in the context of the charges assessed against Farnworth.

The United States Constitution's Sixth Amendment declares:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense.

From the Sixth Amendment and a criminal defendant's right to due process emanates the right to a fair opportunity to defend against the State's accusations. *Chambers v. Mississippi*, 410 U.S. 284, 294, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973); *State v. Jones*, 168 Wn.2d 713, 720, 230 P.3d 576 (2010). A defendant's right to an opportunity to be heard in his defense, including the right to examine witnesses against him and to offer

19

testimony, is basic in our system of jurisprudence. *Chambers v. Mississippi*, 410 U.S. at 294; *State v. Jones*, 168 Wn.2d at 720. That right is not absolute, however.

Although the accused enjoys a constitutional right to present a defense, the scope of that right does not extend to the introduction of otherwise inadmissible evidence. *State v. Aguirre*, 168 Wn.2d 350, 362-63, 229 P.3d 669 (2010). An accused does not have a right to offer incompetent, privileged, or otherwise inadmissible evidence under standard rules of evidence. *Taylor v. Illinois*, 484 U.S. 400, 410, 108 S. Ct. 646, 98 L. Ed. 2d 798 (1988); *State v. Lizarraga*, 191 Wn. App. 530, 553, 364 P.3d 810 (2015), *review denied*, 185 Wn.2d 1022, 369 P.3d 501 (2016). So to determine whether the trial court's ruling abridged Gary Farnworth's constitutional right to present a defense, we review whether the evidence satisfied evidence rule strictures.

The challenged ruling excluded evidence on the grounds of relevancy. For evidence to be admissible, it must be minimally relevant. *State v. Darden*, 145 Wn.2d 612, 621, 41 P.3d 1189 (2002). To be relevant, evidence must tend to prove or disprove the existence of a fact that is of consequence to the outcome of the case, including facts that provide evidence of any element of a defense. ER 401; *State v. Weaville*, 162 Wn. App. 801, 818, 256 P.3d 426 (2011).

Gary Farnworth attempted to cross-examine witnesses about whether DLI would have paid him workers compensation at a lower rate if he had been honest about his work at TCS Auto Wholesale. Farnworth also sought to offer expert testimony that the DLI

would have paid him had he disclosed his employment. The trial court ruled the evidence irrelevant because theft by deception centers on the deceptive act and not whether the victim would have parted with less without the deception. Also, the victim need not solely rely on the defendant's deception when relinquishing property. We agree.

We examine the crime of theft in order to determine the relevancy of the evidence Gary Farnworth attempted to introduce. A person is guilty of first degree theft if he thieves property which exceeds five thousand dollars "in value." RCW 9A.56.030(1)(a). Under Gary Farnworth's charges, "theft" means:

> (b) By color or aid of deception to obtain control over the property or services of another or the value thereof, with intent to deprive him or her of such property or services.

RCW 9A.56.020(1)(b). In turn, "by color or aid of deception" means that:

> that the deception operated to bring about the obtaining of the property or services; it is not necessary that deception be the sole means of obtaining the property or services.

RCW 9A.56.010(4).

Although the current statutory definition of theft by deception does not explicitly require reliance, this court has held that reliance remains an essential element of the crime. *State v. Mehrabian*, 175 Wn. App. 678, 701, 308 P.3d 660 (2013); *State v. Casey*, 81 Wn. App. 524, 527-28, 915 P.2d 587 (1996). The phrase by *aid of deception* implies reliance on the part of the victim. *State v. Casey*, 81 Wn. App. at 528. Still, the deception need not be the sole reason that induced the victim to surrender the property.

21

*State v. Mehrabian*, 175 Wn. App. at 701. The State need only show that the victim believed and relied on the false representations and in some measure the representations operated to induce the victim to part with the property. *State v. Mehrabian*, 175 Wn. App. at 701.

More importantly, the value of property, for purposes of the theft statute, is the total value of the property relinquished by the victim regardless of whether the victim received some offsetting value in exchange. In this setting, Gary Farnworth misappropriated, for purposes of theft, the total sum paid him by DLI regardless of whether DLI would have tendered him a lower sum upon being honest.

The trier of fact determines the value of property for purposes of the degree of theft by the amount of money received by the accused not the difference between the amount of money and the market value of the item sold. *State v. George*, 161 Wn.2d 203, 207, 164 P.3d 506 (2007). The legislature did not intend an inquiry into the thief's net gain or the victim's net loss. *State v. George*, 161 Wn.2d at 209. In deception cases, the statute looks only to the value of the property obtained, not the net result of the exchange. *State v. George*, 161 Wn.2d at 209.

A controlling decision is *State v. George*, 161 Wn.2d 203 (2007). John and Tommy George, father and son, fraudulently misrepresented the condition and history of a truck they advertised for $5,500. After an undercover police officer handed the Georges a cashier's check for $5,500, the State charged and convicted the two with first

22

degree theft. On appeal, the Georges contended that the State did not prove the value of the property taken by deception to exceed $1,500, then the minimum for first degree theft. The Georges argued that, even if the truck lacked a value of $5,500, the truck had a significant value and the State had not proved that the truck's value deceeded $4,000. The Supreme Court affirmed the first degree theft conviction since the Georges took property in the value of $5,500 not some lesser amount representing the difference between $5,500 and the truck's market value.

## Aggregation

The most difficult issue we face concerns the State's aggregation of many counts or thefts into three separate counts of first degree theft. We must resolve if the State may aggregate the value of medium size thefts in order to convict on a larger value theft. If the answer to this question is yes, we must decide whether the State may aggregate the lower value thefts into two or three higher value theft counts, rather than one larger theft count. Finally, if the State may aggregate into two or more charges, we must decide under what circumstances the State may aggregate into more than one charge. When resolving the last question, we emphasize that the State alleged that Gary Farnworth engaged in three, not one, common schemes or plans and a jury instruction allowed aggregation of values only with a common scheme or plan. Although the common law allows aggregation of counts, the State did not plead or argue the common law standard

23

for aggregation, but rather pled and argued the aggregation standard found in Washington's aggregation statute, RCW 9A.56.010(21)(c).

The State charged Gary Farnworth with three separate counts of first degree theft, with each count separated by the dates during which Farnworth recovered from surgeries. Farnworth argues that the trial court erred in denying his trial motion to dismiss two counts of first degree theft, thereby limiting the charges to one count of first degree theft. The jury convicted him of only two of the three charges. The State responds that the trial court committed no error when denying the motion because the prosecution enjoys broad discretion in charging. The State suggests that Farnworth should not complain that the State charged him with three counts, because the State could have charged him with forty-six counts of third degree theft, or one count for each time he received a payment warrant for DLI benefits, and thereby garner a higher sentence.

RCW 9A.56.020 defines "theft" as:

(1) "Theft" means:
(a) To wrongfully obtain or exert unauthorized control over the property or services of another or the value thereof, with intent to deprive him or her of such property or services; or
(b) By color or aid of deception to obtain control over the property or services of another or the value thereof, with intent to deprive him or her of such property or services; or
(c) To appropriate lost or misdelivered property or services of another, or the value thereof, with intent to deprive him or her of such property or services.

The State relied solely on subsection (b) of the statute.

24

The legislature divided the crime of theft into three degrees. Theft in the first degree entails the taking of property or services exceeding $5,000 in value. RCW 9A.56.030(1)(a). Theft in the second degree involves taking of property or services exceeding $750 in value, but not exceeding $5,000 in value. RCW 9A.56.040(1)(a). Finally, theft in the third degree constitutes taking of property or services of $750 or less in value. RCW 9A.56.050(1)(a). Sometimes an accused engages in a pattern of small thefts against the same victim, but, when the individual thefts be totaled, accumulate to a higher degree of theft. Gary Farnworth's ongoing theft of DLI benefits fits this scenario. In this appeal, the dispute between the parties requires an analysis as to the extent to which the prosecution should be afforded discretion in charging.

RCW 9A.56.010(21)(c) addresses the number of theft counts to be charged when the accused engages in an ongoing scheme of theft. The statute provides:

> [W]henever any series of transactions which constitute theft, would, when considered separately, constitute *theft in the third degree* because of value, and said series of transactions are a part of a criminal episode *or a common scheme or plan*, then the transactions *may* be aggregated in *one count* and the sum of the value of all said transactions shall be the value considered in determining the degree of theft involved.

(Emphasis added.) The State does not argue that Gary Farnworth engaged in a criminal episode, but instead relies on the alternative aggregation ground of engaging in a common scheme or plan.

25

The parties assume that RCW 9A.56.010(21)(c) applies, but notice that the statute only refers to the aggregation of transactions involving third degree theft. The parties may assume that each DLI payment to Gary Farnworth constituted third degree theft, but the undisputed evidence shows otherwise. During the several years of receiving benefits, Farnworth garnered warrants of $1,626.80, $1,676.92, $1,662.60 or $1,739.34. No payment deceeded $750. Each transaction involved second degree theft, not third degree theft. Therefore, we must decide whether the State could aggregate the value of a number of second degree thefts to convict for first degree theft. We answer in the affirmative, although we later hold that aggregation was not appropriate under the facts of this case.

The common law allowed aggregation of a series of thefts, so long as the accused took the property from the same owner and at the same place and resulted from a single criminal impulse pursuant to a general larcenous scheme. *State v. Garman*, 100 Wn. App. 307, 314-15, 984 P.2d 453 (1999); *State v. Atterton*, 81 Wn. App. 470, 472, 915 P.2d 535 (1996); *State v. Vining*, 2 Wn. App. 802, 808, 472 P.2d 564 (1970). No statute needed to authorize the State to aggregate lesser value thefts.

*State v. Barton*, 28 Wn. App. 690, 694-95, 626 P.2d 509 (1981) controls the question of whether the State may seek common law aggregation. On five separate occasions, Dale Barton forged his brother's signature on a savings account withdrawal slip. Each withdrawal amounted to only value consistent with second degree theft

26

charges, but the State aggregated the thefts into one count of first degree theft. This court noted that former RCW 9A.56.010(12)(c) (1975) mentioned aggregation only of third degree theft changes. We held, however, that the State could aggregate the value of second degree thefts to charge first degree theft. We reasoned that the statute did not purport to abrogate the common law.

One might question the holding of *Barton*, since one might assume the legislature would have added language expressly permitting aggregation of second degree theft charges if the legislature so desired aggregation under such circumstances. Principles of statutory construction suggest otherwise. A statute abrogates the common law when the provisions of a statute are so inconsistent with and repugnant to the prior common law that both cannot simultaneously be in force. *State v. Bravo Ortega*, 177 Wn.2d 116, 125, 297 P.3d 57 (2013); *Potter v. Washington State Patrol*, 165 Wn.2d 67, 77, 196 P.3d 691 (2008); *State ex rel. Madden v. Public Utility District No. 1 of Douglas County*, 83 Wn.2d 219, 222, 517 P.2d 585 (1973). The common law must be allowed to stand unaltered as far as is consistent with the reasonable interpretation of the new law. *Green Mountain School District No. 103 v. Durkee*, 56 Wn.2d 154, 161, 351 P.2d 525 (1960). RCW 9A.56.010(21)(c) does not expressly deny the aggregation of second degree thefts. Furthermore, Gary Farnworth does not challenge the aggregation based on his takings entailing second degree theft, rather than third degree theft.

We next discuss whether the State had the option to aggregate Gary Farnworth's

second degree thefts into three charges and two convictions, rather than one charge and a solo conviction. In *State v. Hoyt*, 79 Wn. App. 494, 904 P.2d 779 (1995), this court interpreted RCW 9A.56.010(21)(c) to require the State to decide either to aggregate all thefts into a single count or not aggregate any of the thefts. Edward Hoyt purloined his parents' ATM card. During a window of six months, he withdrew $19,838 from the parents' bank account, with no withdrawal exceeding $200. The State brought six charges, five of first degree theft and one of second degree theft by aggregating the amount withdrawn during each of the six months. The trial court dismissed five of the six counts, and this court affirmed. A common scheme or plan can be aggregated into one count, but only one count.

This court decided *State v. Hoyt* under the provisions of former RCW 9A.56.010(12)(c) (1994). Although the State proceeded on the assumption that RCW 9A.56.010 applied, the prosecution of Gary Farnworth could only rest on common law aggregation. According to *State v. Linden*, 171 Wash. 92, 17 P.2d 635 (1932), the State, under the common law, enjoys the prerogative of aggregating the charges into more than one first degree theft charge or, as in *Linden*, more than one count of grand larceny. The *Linden* court allowed a continuing scheme to embezzle from a bank to be charged into three counts based on three windows of time. The opinion contains no reason why the State divided the time into three periods and the State did not disclose why it chose the three windows of time over some other possible periods of time. The court ruled:

28

"Where the periods covered by the different counts are separate and distinct, as they are in this case, the wrongful appropriations during each period may be charged in a different count." 171 Wash. at 102. The ruling suggests that the State had unlimited discretion in charging different counts for distinct periods of time as long as one period of time for one charge did not overlap another charge's period of time.

RCW 9A.56.010(21)(c) and the common law conflict as to the circumstances under which the State may aggregate into more than one count. Under the statute, each count must differ from all other counts as to its plan and scheme. Under the common law, the State may aggregate into an endless variety of counts as long as each count is distinct in time. The concurrence ably argues that, with the passage of RCW 9A.56.010(21)(c), the State may aggregate one or more second degree thefts into a first degree theft charge only under the statutory prerequisite of a common plan and scheme. In other words, common law aggregation may occur only if the State proves a common plan and scheme. The concurrence also ably argues that allowing aggregation into more than one charge under the common law standard of distinct times may violate the double jeopardy clause. We need not base our opinion on either of these arguments because the State only pled and argued and a jury instruction only allowed aggregation based on a common plan and scheme. We avoid deciding constitutional questions when a case may be fairly resolved on other grounds. *Community Telecable of Seattle, Inc. v. City of Seattle, Department of Executive Administration*, 164 Wn.2d 35, 41, 186 P.3d 1032

29

(2008).

The State charged Gary Farnworth with three counts of theft based on a common scheme or plan. The State alleged a common scheme or plan, not distinct period of times. More importantly, jury instruction 10 allowed aggregation of individual thefts to convict on first degree theft only if the transactions involved a common scheme or plan. The State did not object to the jury instruction. Thus, the jury could aggregate only under the statutory, not the common law, standard. Under the law of the case doctrine, jury instructions not objected to become the law of the case. *State v. Hickman*, 135 Wn.2d 97, 102, 954 P.2d 900 (1998).

The dissent devotes pages to an analysis of the common law standard of aggregation that allows distinct aggregated counts based on divergent periods of time. The dissent errs by failing to note that the State argued and the jury instruction demanded a finding of a "common scheme or plan" under RCW 9A.56.010(21)(c). Neither party challenges the jury instruction on appeal. The State does not argue aggregation under the common law on appeal. The dissent usurps the prerogative of the prosecutor by challenging on its own the validity of the instruction and traveling into territory never requested by the State. The dissent would affirm a conviction on a theory never charged and on grounds contrary to a jury instruction.

Because of the pleadings, argument, and jury instruction, we must determine if the State established distinct plans or schemes for each count. The State charged Gary

Farnworth with three counts of first degree theft because surgery twice interrupted his worker compensation scheme. The surgeries provided gaps in the scheme from November 1, 2010 to November 6, 2010, and from January 9, 2012 to February 13, 2012. The State contends that, after each surgery and convalescence, Farnworth began a new plan or scheme. His conscience could have pricked him during his convalescence to end his criminal behavior. Thus, he needed to decide again to steal from DLI. We reject this argument. Such an argument could be made for each time Farnworth received a warrant that directed him not to cash the warrant if he worked. The State presented no evidence that Farnworth's conscience consciously considered the criminality of his behavior while recuperating from surgery. The State's argument could lead to many arbitrary distinctions between thefts performed by an accused with the same purpose and intent against one victim.

Our dissenting brother criticizes our ruling on the ground that our holding encourages the State to charge forty-six second degree theft charges instead of three first degree theft charges. The dissent notes that, in the long term, our decision harms, not benefits, the accused. A dissenter in *State v. Fournier*, 617 A.2d 998, 1002 (Me. 1992) (Collins, J., dissenting) echoed this criticism. We recognize the potential harm to the accused, but choose to remain faithful to the law. Also, we expect prosecutors to continue to exercise wise discretion in accordance with prosecutorial standards not to overcharge a defendant. Finally, the State could have based its aggregation on distinct

31

periods of time if it had not relied on statutory aggregation.

Gary Farnworth also assigns error to the State's aggregation of thefts because the aggregation could have led the jury to enter its finding of a major economic offense or series of offenses. Nevertheless, Farnworth concedes that this finding did not influence his sentence. Therefore, any error was harmless. We vacate one of Gary Farnworth's convictions for first degree theft.

Jury Instruction

Gary Farnworth contends the trial court erred by refusing to include the term "common scheme or plan" as an element of the crimes of first degree theft in the to-convict jury instructions. The law also refers to to-convict instructions as elements instructions. Our trial court's respective to-convict jury instructions, jury instructions 15, 16, and 17, listed property exceeding a value of $5,000 as an element of first degree theft. Nevertheless, the to-convict instructions did not tell the jury that it could aggregate several thefts involving a common scheme or plan to meet the $5,000 requirement. A separate instruction, jury instruction 10, informed the jury that, to find a value of $5,000, the jury may add the sum of the values of all transactions that constitute a common scheme or plan.

The State responds to Gary Farnworth's assignment of error by arguing that a common scheme or plan was not an element of the crime and that describing a common scheme or plan in jury instruction 10 sufficed. We hold that the trial court committed

32

error by failing to include the "common scheme or plan" language in the elements instructions, but conclude the error to be harmless.

We review the sufficiency of a to-convict instruction de novo. *State v. Williams*, 162 Wn.2d 177, 182, 170 P.3d 30 (2007). A to-convict instruction serves as a yardstick by which the jury measures the evidence to determine guilt or innocence. *State v. DeRyke*, 149 Wn.2d 906, 910, 73 P.3d 1000 (2003); *State v. Smith*, 131 Wn.2d 258, 263, 930 P.2d 917 (1997). A trial court's failure to instruct the jury as to every element of the charged crime violates due process. *State v. Rivas*, 168 Wn. App. 882, 891, 278 P.3d 686 (2012). The elements instruction ensures due process by preventing the jury from having to guess at what the State needs to prove beyond a reasonable doubt. *State v. Smith*, 131 Wn.2d at 263. For instance in the case on appeal, if a common scheme or plan is an element of the crime of first degree theft, the trial court did not expressly inform the jury that it must find the existence of a common scheme or plan beyond a reasonable doubt.

Two decisions inform our holding that it was error not to include "common scheme or plan" in the elements instruction when the State relied on a common scheme or plan to prove a particular degree of theft. *State v. Hassan*, 184 Wn. App. 140, 146, 336 P.3d 99 (2014) and *State v. Rivas*, 168 Wn. App. 882 (2012). In *State v. Hassan*, Ibrahim Hassan appealed a conviction for second degree theft. Hassan assigned error to the to-convict instruction because the instruction did not impose on the State the burden of showing an aggregation of the value of multiple thefts as part of a common scheme or

33

plan. He argued that the State had to aggregate the amounts from multiple transactions to reach the $750 value for second degree theft. We held that if "the State aggregates value to reach a statutory value threshold, a common scheme or plan is an essential element of a crime that must be included in the information and in the to-convict instruction." *State v. Hassan*, 184 Wn. App. at 146. We did not reverse the conviction, however, because the undisputed facts established that Hassan took $1,000 from the victim.

Our holding in *Hassan* may be dicta because we resolved the appeal on other grounds. Nevertheless, the holding followed the ruling in *State v. Rivas*. In *Rivas*, the State convicted Benjamin Rivas of second degree malicious mischief. Just as in the theft statute, the State needed to prove damage to property in an amount exceeding $750 to convict for second degree mischief. Just as in the theft statute, the malicious mischief statute allowed the State to aggregate damages to reach the $750 threshold if the defendant damaged more than one item of property pursuant to a "common scheme or plan." RCW 9A.48.100(2). We reversed the conviction of Benjamin Rivas because the State failed to plead a common scheme or plan. We held that a common scheme or plan is an essential element of the crime when the State aggregates the value of damaged items of property in order to reach the statutory damage threshold. We further held that the elements instruction must also include a common scheme or plan. Because of the pleading error, we did not address whether the instructional error was harmless.

The State asks that we ignore *State v. Hassan* and *State v. Rivas*. In so requesting,

34

the State likens the "common scheme or plan" concept for first degree theft as language defining "value" unnecessary to be included in the elements instruction. On several occasions, Washington courts have held that definitions to words in the elements instruction need not be inserted in that instruction, but rather contained in a separate jury instruction. For example, in *State v. Lorenz*, 152 Wn.2d 22, 36, 93 P.3d 133 (2004), the court held the definition of "sexual contact" as including "sexual gratification" was not required in a to-convict instruction for the crime of child molestation. In *State v. Saunders*, 177 Wn. App. 259, 270, 311 P.3d 601 (2013), the court held the trial court need not include the definition for the word "abduct," which word fell within the elements instruction for the crime of kidnapping.

Based in part on *State v. Hassan* and *State v. Rivas*, we conclude that the "common scheme or plan" language is not a definition of the term "value," an element of the crime of theft. The first paragraph of Gary Farnworth's jury instruction 10 contained a definition of "value" as "the market value of the property or services at the time and in the approximate area of the act." CP at 499. Aggregation through a common scheme or plan does not present itself as a definition of value, but operates as an alternative means in finding the market value of the property.

The State cites *State v. Cross*, 156 Wn.2d 580, 617, 132 P.3d 80 (2006), *State v. Reid*, 74 Wn. App. 281, 292, 872 P.2d 1135 (1994), and *State v. Stanton*, 68 Wn. App. 855, 863, 845 P.2d 1365 (1993) for the proposition that a common scheme or plan is not

35

an element of theft in the first degree. In *State v. Reid*, 74 Wn. App. at 292, we wrote that a common scheme or plan is not an element of the crime of theft. Nevertheless, we relied on shaky grounds for this proposition, since we cited *State v. Stanton*, 68 Wn. App. at 863 (1993), another of the State's cases cited on appeal. *Stanton* involved whether to admit evidence under ER 404(b) on the ground that other criminal conduct involved a common scheme or plan. *State v. Cross* involves charges for murder and does not declare that a common scheme or plan is not an element of any crime.

Despite identifying error in the elements instruction, we find the error harmless. When a to-convict instruction omits an essential element, the error is harmless if the reviewing court is convinced beyond a reasonable doubt any reasonable jury would reach the same result absent the error. *State v. O'Donnell*, 142 Wn. App. 314, 322-23, 174 P.3d 1205 (2007). The undisputed evidence established that Gary Farnworth garnered more than $5,000 in DLI benefits during each charging period. His scheme or plan never varied within each charging period.

## CONCLUSION

We affirm one of Gary Farnworth's convictions for first degree theft. We remand the case to the superior court to vacate one of Farnworth's convictions and for resentencing based on one conviction.

_____
Fearing, C.J.

36

No. 33673-5-III

PENNELL, J. (concurring) — I agree with the principal opinion that Mr. Farnworth can only be convicted of one count of first degree theft. However, I disagree with the reasons why this is so.[1] I do not interpret Washington's theft statute as permitting prosecutors common law discretion to divide a continuing offense of first degree theft into multiple charges according to time periods. Such a rule would violate fundamental principles of separation of powers and would endanger defendants' rights against double jeopardy.[2] It is the legislature that defines the available units of prosecution for first degree theft, not a prosecutor. The facts in this case involved one ongoing scheme to illegally purloin worker compensation benefits. Washington's statutory theft scheme permitted the prosecutor either to charge and prove each individual act of theft or to charge one ongoing act of theft, unified by a common plan or scheme or criminal episode. Because the State improperly tried to craft a third option, resulting in multiple convictions of first degree theft, only one of Mr. Farnworth's convictions can stand.

In 1975, the legislature codified the crime of theft pursuant to a detailed statutory scheme under chapter 9A.56 RCW. LAWS OF 1975, 1st Ex. Sess., ch. 260, §§ 9A.56.030-.050. Under this scheme, there are three degrees of theft, differentiated largely by value. RCW 9A.56.030-.050. Of the three degrees of theft, only one—third degree theft—is a

---

[1] Apart from this disagreement in reasoning, I agree with the remainder of the principal opinion in full.

[2] U.S. CONST. amend. V; CONST. art. I, § 9.

misdemeanor. RCW 9A.56.050. Currently this offense is capped at a maximum value of

$750. *Id.* The legislature has specifically authorized prosecutors to aggregate a series of

misdemeanor thefts into either second or first degree theft if the series of misdemeanor

thefts were part of a criminal episode or a common scheme or plan. RCW

9A.56.010(21)(c).

While the legislature has taken over the task of defining theft, the common law

remains relevant. The common law can act as a supplement to penal statutes enacted by

the legislature so long as it is "not inconsistent with the Constitution and statutes of this

state." RCW 9A.04.060. Based on the common law tradition of prosecutors aggregating

multiple instances of theft into a larger, ongoing offense, our court has held prosecutors

can aggregate all forms of theft, not just misdemeanor theft. *State v. Barton*, 28 Wn.

App. 690, 694, 626 P.2d 509 (1981).

The ability to aggregate charges vests prosecutors with great power. They can

choose to prosecute a series of lower level thefts, each with a lower range of penalty.

*State v. Kinneman*, 120 Wn. App. 327, 336-37, 84 P.3d 882 (2003). Or they can decide

to aggregate thefts in order to obtain a more serious classification of conviction. *State v.*

*Hoyt*, 79 Wn. App. 494, 495, 904 P.2d 779 (1995). This choice is purely an executive

function and essentially unreviewable by our courts.

But while prosecutors have discretion to aggregate single instances of theft into a

greater charge, they do not have the ability to "define what the Legislature intended as the

2

punishable act of . . . theft." *State v. Turner*, 102 Wn. App. 202, 210, 6 P.3d 1226 (2000). To do so would violate separation of powers. *See id.*; *State v. Adel*, 136 Wn.2d 629, 635, 965 P.2d 1072 (1998). Instead of laying in the hands of the prosecutor, the question of what may constitute one count of theft versus two or three is answered by analyzing the unit of prosecution intended by the legislature. *Turner*, 102 Wn. App. at 210. Employing the unit of prosecution analysis not only guards against overzealous prosecutions but also "protects a defendant from being convicted twice under the same statute for committing just one unit of the crime." *Adel*, 136 Wn.2d at 634. If a statute does not clarify a unit of prosecution for a given crime, we do not defer to the common law or a prosecutor's choice. Instead, we employ the rule of lenity. *Id.* at 634-35. Under this rule, doubts about whether the legislature intended one crime or multiple crimes are resolved in favor of the defendant. *Id.*

Our legislature has left no doubt about what the unit or prosecution is when it comes to aggregating a series of misdemeanor thefts. In this circumstance, RCW 9A.56.010(21)(c) controls. A prosecutor seeking to aggregate a series of third degree thefts can roll the individual offenses together into *one* felony charge, so long as the thefts were committed as part of a criminal episode or common plan or scheme. *Hoyt*, 79 Wn. App. at 495.

The legislature has not clarified whether the unit of prosecution is similar when a prosecutor seeks to aggregate a series of felony thefts. However, previous panels of our

3

court have found the test is the same. *Barton*, 28 Wn. App. at 694 (multiple acts of second degree theft properly aggregated into one count of first degree theft as a common scheme or plan); *State v. Garman*, 100 Wn. App. 307, 314-15, 984 P.2d 453 (1999) (thefts of varying degrees could be aggregated so long as they are part of the same general larcenous scheme). This is consistent with the rule of lenity, as it restrains prosecutorial power and would result in a decision favorable to Mr. Farnworth.

Despite the parties' recognition that the common plan or scheme requirement applies to all forms of aggregation, my colleagues rely on the pre-1975 case of *State v. Linden*, 171 Wash. 92, 17 P.2d 635 (1932), for the proposition that prosecutors have broad power to aggregate separate acts of theft so long as different counts cover different time periods. I disagree that *Linden* has any application now that the legislature has codified specific degrees of theft. Whatever power a prosecutor previously had to define what constitutes one offense of theft,[3] that power has been taken away. Now that the legislature has defined theft, we can only look to the statute to determine what constitutes one unit of theft. *See Brown v. Ohio*, 432 U.S. 161, 165, 97 S. Ct. 2221, 53 L. Ed. 2d 187

---

[3] *Linden*'s analysis is of questionable value. The Supreme Court itself qualified its reasoning by noting the prosecutor's choice of multiple charges was harmless since the defendant only received one total punishment. *Linden*, 171 Wash. at 103. In so doing, the court appears to have recognized double jeopardy concerns that could be caused by a prosecutor's broad ability to define units of crimes. In addition, *Linden* conflicts with the U.S. Supreme Court's decision in *Ex Parte Snow*, which held that even under the common law, prosecutors did not enjoy the power to divide a continuing offense up into arbitrary time periods. *Ex Parte Snow*, 120 U.S. 274, 7 S. Ct. 556, 30 L. Ed. 658 (1887).

4

(1977); *Adel*, 136 Wn.2d at 634. Because the theft statute is, at best,[4] ambiguous, the rule

of lenity dictates that we construe this ambiguity in favor of Mr. Farnworth. *Turner*,

102 Wn. App. at 210; *Adel*, 136 Wn.2d at 635.

Contrary to my dissenting colleague's position, limiting aggregation to common

plans or schemes would not encourage overzealous prosecutions. Quite the opposite.

Were prosecutors permitted to aggregate various acts of theft according to their

imaginings of what constitutes distinct time periods, the ability to charge one count of

first degree theft versus two, three, or even ten would be virtually limitless. This would

raise serious double jeopardy concerns, in that one ongoing offense of first degree theft

could be punished multiple times. The Constitution requires more: "The Double

Jeopardy Clause is not such a fragile guarantee that prosecutors can avoid its limitations

by the simple expedient of dividing a single crime into a series of temporal or spatial

units." *Brown*, 432 U.S. at 169.

As I interpret Washington's statutory theft scheme, a prosecutor can either

individually charge each act of a lower degree theft or aggregate a series of related lower

degree thefts into one count of a higher degree theft that is unified according to either a

---

[4] Because the legislature only specifically contemplated the possibility of aggregation in the context of third degree theft, one could invoke the rule of lenity to mean individual acts of second or first degree theft cannot be aggregated. However, I defer to our prior decision in *Barton* that aggregation can occur so long as there is a unifying criminal impulse or general larcenous scheme. 28 Wn. App. at 694.

criminal episode or a common plan or scheme. Under this interpretation, prosecutors still enjoy broad discretion and power. Numerous low level theft charges can be brought but with the proviso that the prosecutor must prove each individual offense beyond a reasonable doubt. *Kinneman*, 120 Wn. App. at 336-38. Alternatively, a more serious degree of theft may be charged. This relieves the prosecutor from having to obtain unanimity as to each individual act and ensures full restitution, but it requires proof that the defendant's ongoing conduct was unified by either an ongoing scheme or a continuing criminal episode. *Garman*, 100 Wn. App. at 313.

The enhanced prosecutorial discretion my colleagues would confer on prosecutors is inconsistent with the governing legislative framework and important constitutional controls. I therefore disagree with the analysis suggested by my colleagues but concur in the result reached by the principal author.

_____
Pennell, J.

No. 33673-5-III

KORSMO, J. (dissenting) — This case was properly charged. In ruling otherwise, the lead opinion misinterprets a statute that it agrees does not apply, thereby confusing common law aggregation with statutory aggregation and running afoul of a longstanding Washington Supreme Court decision. It also makes a poor policy choice in limiting common law aggregation. Then, repeating a recurring mistake, the lead opinion compounds the problem by extending that mistake to the jury instructions. Aggregation of felony level offenses should only aid the defense, but this ruling effectively strips that practice away, to the probable consternation of other defendants. The two convictions should be affirmed.

*Aggregation.* The misdemeanor aggregation statute is irrelevant in this case. It is the common law that permits aggregation of felony level offenses. *State v. Barton*, 28 Wn. App. 690, 694-95, 626 P.2d 509 (1981) (citing *State v. Vining*, 2 Wn. App. 802, 808-09, 472 P.2d 564 (1970)).[1] The prosecutor holds the discretion whether or not to aggregate offenses. *State v. Linden*, 171 Wash. 92, 102, 17 P.2d 635 (1932). Moreover,

_____

[1] *Vining* noted that aggregation was permitted if "the successive takings are the result of single, continuing criminal impulse or intent and are pursuant to the execution of a general larcenous scheme or plan." 2 Wn. App. at 808.

that discretion was not limited at common law to either all or nothing. As explained in

*Linden*:

> It is next contended that the court should have required the prosecuting attorney to elect upon which one of the three counts the appellants should be tried. This contention is based on the assumption that the appropriations from the first date in the first count to the last date in the third count constituted a continuous offense, and that they could not be grouped in three separate periods and a count based upon each period.
>
> The appropriations, from what has already been said, appeared from time to time over a period of approximately seven months. Under the law, the appellants could have been charged with a distinct offense for each appropriation, or they could have been charged with a continuing offense covering the entire period; *but it was not necessary that they be charged in one of these two ways. Where the periods covered by the different counts are separate and distinct, as they are in this case, the wrongful appropriations during each period may be charged in a different count.*

*Id.* (emphasis added). The distinct charging periods in *Linden* were May 14 to June 3,

1928; June 9 to August 18, 1928; and September 19 to December 7, 1928. *Id.* at 100.[2]

Given this clear authority, the charging periods selected here easily satisfied the

common law standard. Not only was there a much larger charging period in this case

broken down into only three pieces, those periods naturally flowed from the defendant's

---

[2] From the total sums of money at issue, it appears that the amount obtained on any single occasion must have exceeded the misdemeanor theft level, but nothing in the *Linden* opinion expressly addresses that point. 171 Wash. at 100-01. The threshold for grand larceny in 1928 was $25. LAWS OF 1909, ch. 249, § 353. For the defendant to steal $23,604 during the 21-day charging period of count one, for instance, the thefts had to average more than $1,000 each day (including weekends). To accomplish such a feat while stealing less than felony level in each instance, the defendant would have needed to make over 40 transactions at the bank each day of the charging period.

behavior. There were times when his certification of unemployment was correct, thus entitling him to the full benefits resulting from his disability. The prosecutor did not err by charging three separate periods that resulted from the defendant renewing his unlawful activity.

While *Hoyt*[3] rendered a correct and accurate statement of the meaning of the misdemeanor aggregation statute, that statute has absolutely nothing to do with this case.[4] As noted by *Barton*, aggregation of felony thefts is not accomplished by means of the misdemeanor aggregation statute. 28 Wn. App. at 694. The authority to aggregate felony counts is solely derived from the common law. Even the lead opinion notes that the statute does not prevent aggregation of felonies. The problem presented here is not, however, that the statute does not prohibit aggregation of felony level offenses. The statute simply has nothing to do with aggregation of felonies. It is not the source of the prosecutor's authority, nor is it a check upon it.

Although acknowledging the case authority and recognizing that the misdemeanor theft aggregation statute does not apply to this case, the lead opinion then executes a 180 degree turn and applies the irrelevant statute after first misconstruing it to mean that any

---

[3] *State v. Hoyt*, 79 Wn. App. 494, 904 P.2d 779 (1995).

[4] It appears that the common law likewise permitted aggregation of misdemeanor thefts to only a single felony count. *See Vining*, 2 Wn. App. at 808-09.

3

common scheme or plan can result in only one offense. This approach is wrong on several levels.

First, it misconstrues RCW 9A.56.010(21)(c). In relevant part, the language at issue states:

> whenever any series of transactions which constitute theft, would, when considered separately, constitute theft in the third degree because of value, and said series of transactions are a part of a criminal episode or a common scheme or plan, then the transactions may be aggregated in one count and the sum of the value of all said transactions shall be the value considered in determining the degree of theft involved.

As was nicely explained in *Hoyt*, 79 Wn. App. at 496, that statute's phrase "may be aggregated in one count" means that a series of *misdemeanor* thefts can only be aggregated to a single felony. No one here disagrees with that understanding of *Hoyt*. Nonetheless, the lead opinion says that because the charging document and the jury instruction defining the term "value" both contain the words "common scheme or plan," the prosecution must have relied on the misdemeanor aggregation statute.[5] That is a non sequitur.

This statute addresses only a "series of transactions" that would "constitute third degree theft" and are "part of a criminal episode or a common scheme or plan." In such an instance they may be treated as one felony count. The lead opinion cites no authority

---

[5] The instructions proposed by both parties contained the same "common scheme or plan" language. Clerk's Papers at 269-70, 468, 475-76, 481-82.

4

for the position that parties can disregard the meaning of a statute and thereby bind courts.[6] Similarly, I know of no basis on which parties or judges can change the meaning of a statute simply by using the language in a jury instruction. The statutory definition does not extend to the aggregation of felony level thefts.

Nor can any language in the statute be read to indicate that all "common scheme or plan" thefts, regardless of magnitude, are exclusively controlled by this statute. This statute contains one of the several definitions of "value" enacted by the legislature. It is not a definition of "common scheme or plan," nor is it a directive on the charging of such schemes. "Common scheme or plan" charging is not exclusively a creation of statute, nor does this statute claim such. The lead opinion also cites no authority for this strange reading of the statute.[7]

---

[6] It is hornbook law that the parties cannot convey jurisdiction on a court; they merely invoke existing jurisdiction. *E.g.*, *Dougherty v. Dept. of Labor & Indus.*, 150 Wn.2d 310, 319, 76 P.3d 1183 (2003). I know of no contrary rule that permits parties to reinterpret statutes and thereby bind the courts to a meaning other than the one enacted by the legislature.

[7] The concurrence proposes a theory, not briefed or suggested by the parties, that the legislature four decades ago silently abolished common law aggregation, a proposition unsupported by any legislative history. Theft has been a statutory crime in Washington since at least 1909—well before *Linden*. *See* LAWS OF 1909, ch. 249, § 349 (larceny). Recodification of the modern crime did not change common law practices. The concurrence goes on to suggest that the constitution requires all common scheme or plans to be charged as a single offense without regard to how many separate crimes are committed in the course of the plan and despite the fact that this state has no general criminal "common plan" statute encompassing all crimes motivated by a general impulse. This would be a major rewriting of our criminal law by the courts, despite the fact that it is the legislature that enacts our criminal laws. *E.g.*, *State v. Pillatos*, 159 Wn.2d 459,

5

Third, there is no support for the claim that this case is governed by the misdemeanor aggregation statute. By its very terms, that definitional statute applies only to misdemeanor level thefts. There also is no indication that the parties thought they were trying the case on the basis of the misdemeanor aggregation statute. The statute was not cited in the charging documents, nor was it conveyed to the jury in any manner.

Fourth, even if the misdemeanor aggregation statute applied to this case, this court is not free to apply it in a manner that conflicts with existing precedent. Here, again without citing any authority, the lead opinion interprets the statute to require that charges be aggregated by distinct criminal schemes rather than by distinct time periods. The statute simply does not say anything about schemes, let alone restrict in some manner the charging of common scheme thefts. Instead, it merely defines the permissible scope of aggregation of misdemeanor thefts into a single felony offense.

In contrast, *Linden* expressly permits aggregation by distinct time periods. "Where the periods covered by the different counts are separate and distinct, as they are in this case, the wrongful appropriations during each period may be charged in a different count." 171 Wash. at 102. Thus, even if the statute did claim to address schemes, it cannot be read to limit *Linden*, which addresses aggregation by time period. As the legislature has expressly noted, the common law, when not inconsistent with other laws

---

469, 150 P.3d 1130 (2007); *State v. Ammons*, 105 Wn.2d 175, 180, 713 P.2d 719, 718 P.2d 796 (1986).

or the constitutions, "shall be the rule of decision in all the courts of this state." RCW

4.04.010. Even the lead opinion's new construction of the statute does not supersede

*Linden.*

For the lead opinion to rule as it does, it must implicitly reject *Linden* and hold

that aggregation of *felonies* committed pursuant to a common scheme or plan into other

than a single count is not permitted, but it has no relevant authority for that position.

Instead, it makes its own policy choice, and it is, in my opinion—and with all respect for

my esteemed colleagues—a very poor choice indeed. If there is no authority to aggregate

multiple felony level thefts into more than one offense, then a trial court has no authority

to accept negotiated pleas along those lines. Existing sentence bargains will now be

subject to belated challenge for the same reason.

In instances where the prosecution and the defense are in agreement concerning

resolution of an on-going theft scheme, this decision will present little difficulty since an

agreed on number of discrete charges resulting in an acceptable sentence range can be

filed and an agreement to pay restitution for all of the thefts can be entered into pursuant

to RCW 9.94A.753(5). Problems will arise in cases like this one where either the

defendant denies responsibility or the parties cannot find common ground for a global

resolution. In those instances, the prudent prosecutor will have to quash any merciful

impulses and file all available charges. There is no other method by which full restitution

can be achieved.[8] Although the lead opinion opines that a prosecutor can still exercise charging discretion, the reality of this decision is that the lead opinion has taken much of that discretion away since the prosecutor has been given only the choice of charging one count or charging every count. That simply is not good for anyone.

The misdemeanor aggregation statute has nothing to do with this case and it was error to rely on it in derogation of common law authority. *Linden* controls. The prosecution did not err in charging the three distinct time periods resulting when the defendant's inadvertent compliance with the statute on two occasions interrupted his on-going thefts.

*Jury Instructions.* Also problematic is the decision importing a definitional instruction into the elements instruction. This aspect of the lead opinion is erroneous for several reasons. It misreads the authority on which it relies, unnecessarily conflicts with a previous decision of this court that is on point, wrongly imports definitions into an elements instruction, and confuses the "essential elements" of a charging document with the "elements" of a crime. The purpose of a charging document is to give notice to a defendant concerning the conduct that is alleged to have violated the law, while the purpose of the elements instruction is to inform the jury on what the State needs to prove. While there is often an overlap of those distinct "elements," they are not identical.

---

[8] *See* RCW 9.94A.411(2)(a)(i)(B), providing that offenses may be charged to ensure that they "will result in restitution to all victims."

Initially, it must be noted that neither *State v. Hassan*, 184 Wn. App. 140, 336 P.3d 99 (2014), nor *State v. Rivas*, 168 Wn. App. 882, 278 P.3d 686 (2012), is controlling here. In *Hassan*, the prosecutor did not allege or even attempt to prove aggregation, since the two counts were based on two felony level checks drawn on a closed bank account. 184 Wn. App. at 146. Division Two simply noted that since aggregation was not necessary, there was no error. *Id.* at 147.

In *Rivas*, there actually was an aggregation issue presented. In that case, a prosecution for second degree malicious mischief based on damage to two vehicles belonging to the same victim, the prosecutor failed to allege aggregation by common scheme or plan in the charging document. 168 Wn. App. at 886-87. Division Two correctly determined that the information was defective for the failure to aggregate under the malicious mischief misdemeanor aggregation statute, RCW 9A.48.100(2). *Id.* at 888-89. The conviction was reversed due to the defective charging document. *Id.* at 890-91. In this regard, *Rivas* is probably correct and may even be instructive here, although its aggregation statute is not applicable to this case. At common law, aggregation also appears to have been alleged in the charging document. *E.g.*, *State v. Ray*, 62 Wash. 582, 583-86, 114 P. 439 (1911); *State v. Dix*, 33 Wash. 405, 407-13, 74 P. 570 (1903); *Barton*, 28 Wn. App. at 694-95.

This court expressly held that aggregation is not an element of theft in *State v. Reid*, 74 Wn. App. 281, 292, 872 P.2d 1135 (1994). There we held that it was sufficient

9

to include the concept of aggregation in a definitional instruction rather than the elements instruction. *Id.* Despite that clear holding, the lead opinion decides to follow *Rivas* merely because *Reid* cited an ER 404(b) case as authority for the proposition that the definition need not be incorporated into the elements instruction. Lead Opinion at 33-34. Although certainly *Reid* could have cited more authoritative case law for that point, *Rivas* is not any better.

In dicta, *Rivas* opined that at retrial the elements instruction should include the aggregation language. 168 Wn. App. at 891-93. This unnecessary discussion is erroneous when read, as the lead opinion does in this case, as a mandate for inclusion of the aggregation definition in the elements instruction. Although the jury does need to be instructed on a definition of value that includes the theory of aggregation, and it is permissible to include that definition in an elements instruction, it does not have to be done in that manner since aggregation is not an element of the offense.

The elements of a crime are defined by the legislature, not by the courts. *E.g.,* *State v. Wadsworth*, 139 Wn.2d 724, 734, 991 P.2d 80 (2000).[9] It is those elements that need to be conveyed to the jury via the instructions. *E.g., State v. Allen*, 176 Wn.2d 611, 628, 294 P.3d 679 (2013) (constitutional "true threat" limitation not an essential element of crime of harassment). In addition, the elements of the crime also are conveyed to the

_____

[9] The judiciary has the authority to add elements to a statute where necessary. *E.g., State v. David*, 134 Wn App. 470, 481, 141 P.3d 646 (2006).

10

defendant in the charging document. Because the "elements" are used in both instructions and charging documents, *Rivas* looked to a charging document requirement to discern the components of the elements instruction. That was error when done in *Rivas*, and the lead opinion here continues that error.

The purpose of a charging document is to provide notice to the defendant of the charge against him and its factual basis. *State v. Pelkey*, 109 Wn.2d 484, 491, 745 P.2d 854 (1987). "Jury instructions and charging documents serve different functions." *State v. Vangerpen*, 125 Wn.2d 782, 788, 888 P.2d 1177 (1995). The charging document is not a concern for the jury. Its primary purpose is to alert the defendant to the charge and underlying conduct at issue. *Pelkey*, 109 Wn.2d at 491. From the jury's perspective, the case is contained in the elements instruction and any accompanying definitional instructions. The elements instruction is the "touchstone" for the jury to determine guilt or innocence. *State v. Williams*, 162 Wn.2d 177, 186-87, 170 P.3d 30 (2007).

However, the elements instruction need not include the definitions of its elements.[10] *State v. Lorenz*, 152 Wn.2d 22, 36, 93 P.3d 133 (2004) (definition of "sexual contact" need not be included in instruction defining elements of first degree child molestation). There have been several instances recently where our Supreme Court has

---

[10] In addition to the elements of an offense a jury must be instructed on definitions of "technical terms." *State v. Allen*, 101 Wn.2d 355, 358-62, 678 P.2d 798 (1984). However, a technical term definition need not be included in the elements instruction. *State v. Lorenz*, 152 Wn.2d 22, 31, 36, 93 P.3d 133 (2004).

11

needed to correct appellate court decisions that erroneously incorporated definitions into either the information or into the elements instruction. *E.g.*, *State v. Johnson*, 180 Wn.2d 295, 302-06, 325 P.3d 135 (2014) (definition of "restraint" not needed in information, and definition of "reckless" not needed in elements instruction); *Allen*, 176 Wn.2d at 628-30 ("true threat" need not be included in information or elements instruction).

Apparently recognizing this problem, the lead opinion disclaims that the "common scheme or plan" aggregation language is a component of the definition of value, but, instead "operates as an alternative means in finding the market value of property." Lead opinion at 35. This contention makes no sense. The definition of a word gives us its meaning. I fail to understand how "definition" and "meaning" represent different concepts in this context. In the big picture, however, even that question is absolutely meaningless because the jury needed to determine whether or not the prosecution had established the elements of the offense. The prosecutor had no duty to establish either a "definition" or a "meaning" of the word "value." It merely had to show that the value taken here exceeded $1,500.

The argument made by Mr. Farnworth is that "common scheme or plan," the method of aggregation in this context, is an element of the offense. The lead opinion accepts that claim without proving how it could be an element. The theft statute does not include aggregation among its elements and no common law authority has been discovered that treats aggregation language as an element of theft. There is a common

12

law definition of "common scheme or plan" that is useful in defining when values can be aggregated into a greater theft offense and would justify giving the jury a definitional instruction on the topic. *Barton*, 28 Wn. App. at 694-95. However, that definition simply is not an element of the crime under any theory identified in this litigation.

Properly viewed, the concept of aggregation is one that typically needs to be included in the charging document since it conveys to the defendant the prosecutor's theory of what actions constituted the charged offense. *See Ray; Dix; Barton.*[11] Like many informative elements of an information, however, the concept did not have to be imported into the elements instruction as long as the jury was otherwise told that it needed to find a "common scheme or plan" proven beyond a reasonable doubt since that was a component of the value element. *Cf. State v. Lee*, 128 Wn.2d 151, 158-59, 904 P.2d 1143 (1995) (names of theft victims are not elements of crime of theft even when they should be included in the information (citing cases)). The lead opinion errs in suggesting that the only manner of conveying this information to the jury is via the elements instruction. While that is likely a very convenient place to include that information, it is not a required location, nor is it the sole location to accomplish that task.

---

[11] It does not appear that any particular magic words need be used as long as the defendant is somehow advised that aggregation is being relied on. *See Ray*, 62 Wash. at 583 (allegation that theft occurred "during the month of December, 1909" sufficient to show prosecutor was aggregating multiple misdemeanor theft incidents into one felony charge).

13

No. 33673-5-III
*State v. Farnworth*

Because the lead opinion errs in confusing common law aggregation with statutory

aggregation, and then compounds that error by imposing an unnecessary requirement at

the unnecessary retrial, I respectfully dissent.

_____
Korsmo, J.

14